## BELNAP v. WIDDISON et al.

No. 1821.     Decided May 9, 1907 (90 Pac. 393).

1. TRIAL — INSTRUCTIONS — APPLICABILITY TO EVIDENCE.    Where, in an action for injuries to plaintiff's crops by the overflow of defendants' irrigation ditch, it was shown that, when the overflow was discovered, immediate steps were taken by defendants to stop it and drain the water, an instruction that it was incumbent on plaintiff, if possible, by the exercise of ordinary care to drain, the water, and that, if she sat passively by and saw her crop destroyed, she was negligent, was erroneous as inapplicable to the evidence.

2. DAMAGES—PASSIVENESS OF PERSON INJURED—EFFECT.    In an action for injuries to plaintiff's crop by the overflow of defendants' irrigation ditch, an instruction that, if plaintiff did not exercise ordinary care to protect the crop from damage, if it was within her power, then she herself was negligent, was objectionable as misleading the jury to consider such negligence a complete defense, when, if it existed, it was only relevant in mitigation of damages.

3. TRIAL—INSTRUCTIONS—ABSTRACT PROPOSITIONS.    Where it was undisputed that plaintiff's land was overflowed by water from defendants' ditch, and that the water caused whatever injury was occasioned without any intervening agency, an instruction that, if after the commision of the original act there intervened an independent act of others which in itself caused the injury complained of, then the original act was not the proximate cause, was objectionable as abstract.[1]

APPEAL from District Court, Second District; before Justice J. A. Howell.

Action by Sarah Jane Belnap against James G. Widdison and others. From a judgment for defendants, plaintiff appeals.

REVERSED.

1 Holt v. Pearsons, 12 Utah 63, 41 Pac. 560.

*C. C. Richards* and *A. E. Pratt* for appellant.

*H. H. Henderson* for respondents.

APPELLANT'S POINTS.

But there is no ground for presuming acquiescence in statements, unless they are of such character as would naturally call for a response, and unless the party sought to be charged was in such a situation that he probably would have replied to them, if untrue. (*Barry v. Davis,* 33 Mich 515; *Churchill v. Fulliam,* 8 Iowa 45; *Gibney v. Marchay,* 34 N. Y. 301; *Slattery v. People,* 76 Ill. 217; *Whitney v. Houghton,* 127 Mass. 527.)

Generally the cases in which the party is held to be affected by his silence are where statements are made concerning his own actions or liabilities. (*Gibney v. Marchay,* 34 N. Y. 301.)

Such statements when made by a stranger should be received and applied with caution. (*Whitney v. Houghton,* 127 Mass. 527.)

They could not say to the plaintiff that they had a right to continue to use the headgate in its defective condition because the Hooper Canal Company, their agent, had failed or refused to repair it. (Thompson on Neg., sec. 75; Farnham on Waters, 1598, 1984; *Lisonbee v. Irrigation Co.,* 18 Utah 348; Thompson on Neg., sec. 7435; *Durfee v. Garvey,* [Cal.], 21 Pac. 302; *South Bend Mfg. Co. v. Liphart* [Ind.], 39 N. E. 908; *Hocutt v. Railroad,* 32 S. E. 681; *Richardson v. Kier,* 34 Cal. 63; 37 Cal. 263; *Chidester v. Consolidated Ditch Co.,* 59 Cal. 197; *Lapham v. Curtis,* 5 Vt. 371, 26 Am. Dec. 310.)

Instructions should be predicated upon the pleadings and evidence in the case. An instruction which is merely a statement of an abstract principle of law, but has no application to the evidence in the case, should be refused. The reason for the rule is that instructions not applicable to the case, although abstractly correct, are apt to mislead the jury and

cause them to believe that there is some evidence tending to prove the facts referred to in the instructions, when, as a matter of fact, there is none. The giving of such an instruction is erroneous. (*Sargent v. Linden Min. Co.*, 55 Cal. 204; Blashfield on Instructions, sec. 83, pp. 182, 201; *Lacy v. Wilson,* 24 Mich. 479; *Comstock v. Norton,* 36 Mich. 278; *Le Masters v. So. Pac. Co.,* 131 Cal. 105.)

RESPONDENT'S POINTS.

The objection being general, this court will not consider the same unless it was incompetent, irrelevant and immaterial for every purpose. (*Olsen v. Railroad,* 24 Utah 460; *Snowden v. Coal Co.,* 16 Utah 372; *Culmer v. Clift,* 14 Utah 291; *Leedom v. Furn. Co.,* 12 Utah 174; *In Re Van Alstine,* 26 Utah 205.)

This court has found it to be error when the *nisi prius* court was instructing a jury where the words "reasonable degree of care" are used, not to define the same. (*Dickert v. Railroad,* 20 Utah 394; *Downey v. Mining Co.,* 24 Utah 431; *People v. Kerm,* 8 Utah 268; *People v. Biddlecome,* 3 Utah 308; *Bragger v. Railroad,* 24 Utah 391.)

This court has laid down the rule time and time again that the entire charge must be considered together, each part as qualified by other parts, and if when so considered it is substantially correct, it is sufficient. (*Olsen v. Railroad,* 24 Utah 460; *Anderson v. Mining Co.,* 16 Utah 28; *Major v. Railroad,* 21 Utah 21; *State v. MecCoy,* 15 Utah 141; *People v. Chadwick,* 7 Utah 141; *People v. Olsen,* 4 Utah 413.)

McCARTY, C. J.

Plaintiff alleges in her complaint that she is now, and ever since the 10th day of October, 1894, has been, the owner of nineteen acres of farming land situate in Weber county, Utah; that defendants now are, and ever since a date long prior to May 20, 1903, have been, the owners of a certain irrigation ditch running along the north line of plaintiff's land through which they convey water from a certain canal to their respective farms; that about May 20, 1903, defendants, having

turned the water from said canal into said ditch, negligently
permitted the same to overflow the banks of said ditch down
to and upon the east half of plaintiff's land, thereby flooding
out and destroying the crops growing thereon; that said over-
flow of water flooded and soaked a large portion of said land
causing the mineral to rise to the surface thereof, and there-
by making the land unfit for agricultural purposes, to plain-
tiff's damage in the sum of $225. For a second cause of ac-
tion plaintiff alleges that defendants in 1904 again negli-
gently permitted the water in said ditch to overflow onto said
land, thereby damaging the land and destroying the crops
growing thereon, to plaintiff's damage in the sum of $675.
The defendants answered and a trial was had to a jury who
returned a verdict in favor of defendants, "No cause of ac-
tion." From the judgment entered on the verdict, plaintiff
prosecutes this appeal.

The uncontradicted evidence shows that in the year 1903,
and again in 1904, water from defendants' ditch overflowed
and covered about nine acres of plaintiff's land, upon which
was growing a crop of alfalfa; that the flooding of the land
caused the mineral to rise to the surface, which killed and de-
stroyed practically all of the alfalfa growing thereon. De-
fendants' ditch, which is known as the "Widdison ditch," ex-
tends from the Hooper canal along the north boundary line
of the land so overflowed. The evidence introduced by plain-
tiff also tended to show that the overflow of water from de-
fendants' ditch onto plaintiff's land was caused by the failure
of defendants to properly clean out their ditch, and keep it in
reasonably safe condition. And the evidence of both plaintiff
and defendants shows that the overflow in the year 1904 was
caused, partly at least, by two artificial dams which had been
placed in the ditch, one of which was near the eastern bound-
ary and the other near the western boundary line of plaintiff's
land. This ditch was supplied with water from the Hooper
canal and through a headgate which was under the exclusive
control of the Hooper Canal Company. The evidence also
shows that the headgate was poorly constructed, out of repair,
and not in a condition for the proper regulation and distribu-

tion of the water to the defendants through their ditch. The defendants introduced evidence tending to show that the overflow of water from their ditch onto plaintiff's land was caused by the partial washing out of this headgate, which, as they claim, they had no right to regulate or in any wise interfere with, thereby permitting more water to flow into the ditch than it had capacity to carry.

The court among other things instructed the jury as follows: *"The court charges you that it was incumbent upon the plaintiff, or her duly authorized agents, if they saw plaintiff's land being overflowed by water, or had knowledge that her land was being overflowed by water to use ordinary and reasonable care to drain off said water, if possible, and remove any obstructions there might be in defendants' ditch which would cause the said water to overflow—that is to say that the plaintiff cannot sit passively by and see her property injured or damaged without attempting to use ordinary and reasonable care to stop or remove the thing that was causing her injury, if it was in her power, or within the power of her duly authorized agents, to do the same*—but in determining this question—that is, as to whether or not the plaintiff was guilty of contributory negligence—you must determine it simply upon the evidence introduced by the plaintiff, the defendants not having set up contributory negligence as a defense." Plaintiff excepted to the part of the instruction which we have italicized, and now assigns the giving of it as error. It is contended, and we think there is merit in the contention, that there is no evidence in the record upon which an instruction of this kind can be predicated. The evidence, without contradiction, shows that when it was discovered that plaintiff's land was submerged by water from defendant's ditch immediate steps were taken to stop the overflow and to drain the water from the land which had accumulated thereon. Elijah Fielding, one of the defendants, testified in part as follows: "I knew that the water that was turned out on the Belnap land in 1904 came from the Widdison ditch. . . . The water that had been flowing on the Belnap field took about two or three days to accumulate. It [referring to the crop]

was just starting to turn yellow. Lucern will start to turn
yellow in two or three days. The lower dam was the biggest
one, but it didn't stop the full stream off. About two-thirds
of the stream was turned into the field." The witness fur-
ther testified that he made a cut in the bank of the ditch at
or near where it passes plaintiff's land, thereby permitting
the water to drain off the land back into the ditch. Continu-
ing, the witness said: "When I drained the water, I did all
that I thought was necessary to be done or that could be done
to drain it out, so if Mr. Belnap [plaintiff's husband] had
been there there was nothing further for him to do. While
we were talking there, Mr. Highley, myself, and Mr. Belnap,
it was agreed I would do that and they went off and let me
do it. Mr. Belnap could not have helped me, as he had no
boots. I had the boots and that was why I was selected to do
the work." In fact, there is no evidence whatever to support
a finding that plaintiff, or any other person or persons author-
ized to act for her, failed to do anything, when they became
advised of the overflow, that should have been done to mitigate
or lessen the damages. But, on the contrary, the record shows
that the defendants assumed the burden of draining the water
from plaintiff's land, and, as stated by one of them who
was a witness in the case, "I did all that I thought was nec-
essary to be done or could be done to drain it." The court,
however, by giving the foregoing instruction, treated the case
as one involving the question of contributory negligence, the
legal effect of which would be to defeat a recovery. The jury
at least were warranted in so construing it. And, even if
there were evidence in the record tending to show that plain-
tiff, after she became advised of the overflow, failed to do
something that she should have done to minimize the damage,
the instruction would still be bad, because such failure would
not defeat her right of action altogether, though it might have
the effect of reducing the amount of her recovery for damages
caused by the water standing in pools and ponds upon her
land; whereas, the jury might well have construed the instruc-
tion to mean that, notwithstanding the overflow in the first
instance might have been caused by the negligence of defend-

ants, yet, if they should find that the plaintiff was derelict in failing to drain the water from her land which had thus accumulated thereon, their verdict should be for defendants.

The court also charged the jury: "Even the natural and probable consequences of a wrongful act or omission are not in all cases to be charged to the misfeasance complained of. They are not thus to be charged where there is a sufficient and independent cause operating between the wrongful act complained of and the injury. *If after the commission or omission of the original act complained of there intervenes an independent act of other persons, which in itself caused the injury complained of, then in contemplation of law the original act is interrupted, and in law is considered too remote and the intervening act is considered the proximate cause."* Plaintiff excepted to that part of the instruction in italics, and now insists that the giving of it was error because it is not predicated upon any fact or issue in the case. It is conceded that plaintiff's land was overflowed with water from the Widdison ditch; and it must be further conceded that whatever damage was done could not, from the very nature of the injury, have been caused by some intervening agency. The rule is well settled that instructions should be predicated upon the pleadings and evidence in the case, and that an instruction, even though it may contain a correct statement of the law in the abstract, if it has no application to the issues and evidence in the case, should be refused. The reason for the rule is that instructions not pertinent to the case have a tendency to mislead the jury and to draw their minds from the issues in the case. The instruction, while it correctly states the law as an abstract proposition, has no application whatever to the facts in this case and was therefore erroneous, and the giving of it could not have been other than prejudicial to the interests of the plaintiff. (*Holt v. Pearson,* 12 Utah 63, 41 Pac. 560; *Sargent v. Linden Min. Co.,* 55 Cal. 204; Blashfield on Instructions, section 83; *Lacy v. Wilson,* 24 Mich. 479; *Comstock v. Norton,* 36 Mich. 278; *LeMasters v. So. Pac. Co.,* 131 Cal. 105, 63 Pac. 128; 11 Enc. Pl. & Pr. 161, and cases cited in note.)

The cause is reversed, with costs.

STRAUP and FRICK, JJ., concur.