## MACKAY v. BREEZE et al.

No. 4568.  Decided March 28, 1928.  (269 P. 1026.)
Rehearing Denied Sept. 1, 1928.

306

*P. C. Evans,* of Salt Lake City, for appellants.

*Stewart, Alexander & Budge,* of Salt Lake City, for respondent.

HANSEN, J.

In this cause the plaintiff secured a money judgment against the defendants on account of damages to plaintiff's premises caused by seepage water, and the defendants were enjoined from coursing water through an irrigation ditch unless they either lined the same with cement or constructed a water-tight flume or conduit along the course of the ditch. Defendants appeal.

At the time this action was begun and tried, plaintiff was the owner of 2¾ acres of land located in the southwest quarter of section 34, township 1 south, range 1 west, Salt Lake meridian, in Salt Lake county, Utah. Plaintiff's land abuts on the Redwood road for a distance of 11 rods, and extends west from the road for a distance of 40 rods. Defendant W. H. Breeze owned 70 acres of land adjoining plaintiff's property on the north, and defendant L. C. Breeze owned 5 acres of land adjoining the land of W. H. Breeze on the north. The land of defendants also lies to the west of and abuts upon Redwood road. In about the year 1880 an irrigation ditch was constructed diagonally across the

lands which were owned by the plaintiff and defendants at the time this controversy arose. This irrigation ditch entered plaintiff's land at its southern boundary at a distance of 267.5 feet west of Redwood road, and left plaintiff's land at the north boundary thereof 177 feet west of Redwood road. As the irrigation ditch left the north boundary of plaintiff's land, it entered the land of defendant W. H. Breeze, and continued northeasterly across the land of W. H. Breeze, and then across the land of L. C. Breeze, until it left the land of L. C. Breeze at its east boundary at a point 782.5 feet north of the north boundary of plaintiff's land. The water in this irrigation ditch flows from the southwest to the northeast. The water from the ditch is used to irrigate the land of plaintiff and defendants and also other lands along its course. Some of the lands so irrigated lie beyond and to the east and north of defendant's land.

During the summer and fall of 1923, plaintiff constructed a house upon his land at a point about 50 feet west of Redwood road and 125 feet south of the boundary between plaintiff's land and the land owned by defendant W. H. Breeze. As constructed, the house has a cement lined basement which extends 4 feet below the surface of the ground.

Prior to 1924, none of defendants' land lying to the east of the irrigation ditch and to the west of Redwood road had been cultivated or irrigated. This tract of land, consisting of between 3 and 4 acres, is in the form of a right angle triangle. The old irrigation ditch forms the hypothenuse, Redwood road forms one leg, and the northern boundary line of plaintiff's land forms the other leg, of the right angle triangle. This triangular tract of land could not be irrigated with the water flowing in the old irrigation ditch which formed its hypothenuse. Early in 1924, defendant L. C. Breeze constructed a house on his part of the triangular tract of land near the old irrigation ditch. In the spring of 1924, defendant L. C. Breeze, with the consent of defendant W. H. Breeze, began to level the triangular

tract of land so that it could be irrigated. In order to accomplish this purpose, so the defendants claim, it was necessary to construct a new irrigation ditch. A new ditch was constructed by defendant L. C. Breeze during the spring of 1924. When constructed, the new ditch connected with the old ditch where the old ditch entered the land owned by defendant W. H. Breeze, running thence east 177 feet, thence north 782.5 feet, where it again connected with the old ditch where the old ditch left the land of defendant L. C. Breeze. The new ditch thus ran along the two legs of the right angle triangle tract of land, while the old ditch ran along the hypothenuse of this tract of land. All of the new ditch was constructed upon the lands of the defendants. The old irrigation ditch was destroyed soon after the new ditch was constructed. Beginning with the irrigation season of 1924, irrigation water was coursed through the new ditch, and it continued to flow in the new ditch until the trial of this cause.

Plaintiff's original complaint sets out the change made in the irrigation ditch above indicated, and alleges that the change was made wrongfully and in disregard of plaintiff's rights. Nowhere is it alleged the change was negligently made. Defendants contend that the original complaint was drawn and the cause tried by the plaintiff upon the theory that defendants were liable for any and all damages done to plaintiff's property by seepage water escaping from the new ditch, without regard to any negligence in the construction, operation, or maintenance thereof. Plaintiff here disclaims that the original complaint was drawn and the cause tried upon such theory. Whatever may be the fact in this regard, plaintiff cannot succeed in this action in the absence of allegation and proof of negligence or want of ordinary care on the part of defendants in the construction, operation, or maintenance of the new irrigation ditch.

The rule of law announced in the leading English case of *Fletcher* v. *Ryland*, 1 E. R. C. 235, where it is held that

the defendant was under an absolute duty to keep water which he had collected in a reservoir from doing injury to others, has not generally been applied to ditches and canals. One who constructs a ditch or canal and conveys irrigation water through the same must use ordinary care in the construction, maintenance, and operation of such ditch or canal.. The degree of care required to prevent the escape of water is commensurate with the damage or injury that will probably result if the water does escape. Such is the rule of law repeatedly announced in this jurisdiction and generally established in America and England when applied to ditches and canals. Kinney on Irrigation and Water Rights (2d Ed.) vol. 3, § 1672, p. 3079, and cases cited in the footnote; Weil, Water Rights in the Western States (3d Ed.) vol. 1, § 461, p. 489, and cases cited in the footnote; 15 R. C. L. §§ 38, 39 and 40, pp. 486 to 489; 27 R. C. L. § 127, p. 1209; *Jenkins* v. *Hooper Irrigation Co. et al.*, 13 Utah 100, 44 P. 829; *North Point Consol. Irrigation Co.* v. *Utah & Salt Lake Canal Co.*, 16 Utah 246, 52 P. 168, 40 L. R. A. 851, 67 Am. St. Rep. 607; *Lisonbee* v. *Monroe Irrigation Co.*, 18 Utah 343, 54 P. 1009, 72 Am. St. Rep. 784; *Belnap* v. *Widdison*, 32 Utah 246, 90 P. 393; *Jensen* v. *Davis & Weber Counties Canal Co.*, 44 Utah 10, 137 P. 635; Comp. Laws Utah 1917, § 3474.

This cause, however, was not submitted to the court for decision upon the original complaint. The evidence was completed March 16, 1926, and the time for argument was set for May 7, 1926. On the date set for argument, plaintiff asked and was granted leave to file an amended complaint. The amended complaint was filed July 1, 1926. The findings of fact, conclusions of law, and judgment were evidently signed in October, 1926, the exact date not appearing. They were filed on October 29, 1926. The defendant objected to the filing of the amended complaint upon various grounds and upon this appeal assigns as error the order of the trial court granting leave to file the same. It is here urged on behalf of the defendants that

the amended complaint introduced a new and distinct cause of action. The amended complaint, for the most part, is substantially the same as the original complaint. Both complaints seek to recover damages done to plaintiff's house land, and crops by reason of seepage water escaping from the new ditch, and for injunctive relief. The amended complaint charges defendants with negligently and carelessly constructing the new ditch through gravelly, porous, sievelike materials, without making provision to prevent the water from seeping and percolating through the sides and bottom thereof, and turning the water therein when the ditch would not carry the same. The original complaint did not contain these allegations. We are of the opinion that the amended complaint did not change the plaintiff's alleged cause of action. The right to amend the complaint in this cause comes within the rule laid down in *Larsen* v. *Gasberg*, 43 Utah 203, 134 P. 885.

The plaintiff bases his claim for damages and for injunctive relief upon negligence in three particulars: (1) That the gradient of the new ditch is not as great as that of the old ditch; (2) that the new ditch, as constructed, contains two abrupt turns; (3) that the new ditch was constructed across porous soil through which water readily seeped, and that no provision was made to prevent the water flowing in the new ditch from seeping into plaintiff's premises. There is no substantial evidence in the record that the new ditch does not have a proper gradient. The evidence offered by plaintiff shows that, when the old ditch, which crossed the lands of the parties to this action, was constructed, its average gradient was 3 feet per mile. The new ditch has a gradient of 9 inches, and its length in 959.5 feet. The gradient of the new ditch is therefore approximately 40 per cent greater than the average gradient of the old ditch.

Caleb Tanner, an irrigation engineer called by plaintiff, testified that the mere fact that the new ditch was somewhat longer than the old ditch would not perceptibly affect

the flow of the water. No evidence was offered tending to show that a fall of 9 inches in the new ditch is not sufficient to meet the requirements of approved methods of constructing irrigation ditches.

Evidence as to the effect of abrupt turns in the new ditch upon the flow of water therein is very uncertain. All of the witnesses who testified upon this phase of the case were agreed that an abrupt turn in an irrigation ditch tends to retard the flow of water, but no one even pretended to express an opinion upon the extent of the retardation in the flow of the water in the new ditch caused by the abrupt turns. What effect the abrupt turns may have had upon the quantity of water that seeped from the new ditch is still further removed into the realm of speculation. Here, again, no one pretended to testify that abrupt turns in an irrigation ditch are necessarily condemned by approved methods of constructing irrigation ditches.

A more serious question is presented when we consider the evidence as it relates to the allegation charging defendants with negligence in constructing the new ditch through porous soil without making provisions to prevent the water from seeping into plaintiff's premises. The evidence shows without any substantial conflict that the soil through which the new irrigation ditch was constructed is porous, and that water readily percolates through the same. Some witnesses described the soil as a sand dune, others as sandy loam, while others testified the soil was nothing but blow sand, and others testified that the soil through which the new ditch was constructed was of the same texture as the other soils in that vicinity. The evidence supports plaintiff's contention that, when water is flowing in the new ditch, it seeps into and through plaintiff's premises toward the south until it finds its way into a pond located about 200 feet south and east of plaintiff's dwelling house. The evidence also shows that some seepage water from the new ditch seeped into the basement of plaintiff's house. There is also sufficient evidence in the record to justify findings

that the seepage water from the new ditch caused injury to plaintiff's dwelling house as well as to his land and the crops growing thereon. It appears that less water seeped into plaintiff's premises during the year 1925 than during the year 1924, due, doubtless, to the new ditch becoming somewhat puddled during the second year of its use. The facts which form the basis of plaintiff's claim are, for the most part, established by the evidence.

The principal question to be here determined is the law as applied to the established facts. It is plaintiff's contention that one who constructs a ditch through soil naturally incapable of holding water is bound to exert reasonable efforts to prevent seepage water from injuring ■ the property of another, and that a failure to do so constitutes negligence. We are of the opinion that this is a correct statement of the general rule of law as laid down by the authorities. 15 R. C. L. § 40, p. 489, 490; *Calvert* v. *Anderson*, 73 Mont. 551, 236 P. 847; *Howell* v. *Big Horn Basin Colonization Co.*, 14 Wyo. 14, 81 P. 785, 1 L. R. A. (N. S.) 596; *Reed* v. *State of New York*, 108 N. Y. 407, 15 N. E. 735; *Jensen* v. *Davis & Weber Counties Canal Co.*, supra.

Plaintiff's evidence tends to support a finding that the new ditch was constructed through soil which was porous, and hence likely to and did permit the escape of considerable seepage water into plaintiff's property dur- ■ ing the first year of its use and somewhat less during the second year. We are unable to ascertain from a reading of the evidence in this case just what reasonable efforts the plaintiff claims the defendants should, in the exercise of reasonable care, have exerted to prevent the escape of seepage water from the new ditch. In this state, where land is of little or no value except when irrigated, landowners in agricultural communities have the right to properly irrigate their lands, even though such irrigation results in water seeping into the basement of the homes of those who reside in such agricultural communities. To

hold otherwise would destroy our agricultural communities. Generally, homes are built only upon farms that are irrigated, and farms cannot be made productive without irrigation. The evidence shows that the lands here involved are agricultural lands situated in agricultural territory. It is also made to appear that it has been necessary to drain some of the lands in the immediate vicinity of these lands. When plaintiff constructed the basement for his house, he may well have anticipated that defendants would irrigate their lands, which they had a right to do. The evidence shows that defendants' triangular tract of land could not be irrigated without the construction of a new ditch. Plaintiff is not entitled to a money judgment or injunctive relief merely upon proof of an injury. He must also establish negligence or want of ordinary care. This is not a case of res ipsa loquitur, and negligence or the want of ordinary care cannot be presumed from the mere fact that seepage water escaped from the new ditch. There is no evidence of what is the usual or approved method of preventing the escape of seepage water from a new ditch such as is here involved. Engineer Tanner testified that the quality of the soil where the new ditch was constructed permits water to escape from the ditch until either by long use or artificial means the natural escape will be cut off by actual puddling or some artificial puddling. He was not asked concerning, nor did he recommend, any method or treatment to prevent seepage. It is a matter of common knowledge, which is supported by the evidence in this case, that some water seeps through all ditches which are constructed through natural soil. Generally it is only when the soil is so porous that it permits of an unreasonable amount of water to escape by seepage that artificial means need be employed to prevent such seepage. One who constructs an irrigation ditch through soil such as was done in this case, has performed his duty when he has exercised reasonable efforts to prevent seepage water from escaping. What constitutes reasonable efforts must, of necessity, depend, in part at least, upon the nature and

extent of the probable injury, the amount of money and labor necessary to be expended to prevent the injury, and the probable effectiveness of the efforts expended.

The judgment appealed from provides that the defendants shall not course water through the new ditch unless they either line with cement or water-tight flume or conduit all of the new ditch and the old ditch across plaintiff's land. We are of the opinion that the evidence in this case does not support this part of the judgment. The length of the ditch required to be cemented or made water-tight is approximately 377 feet. There is no evidence in the record of the cost of this improvement, and it may well be, as suggested by counsel for defendants, that the cost is prohibitive.

The only evidence tending to support that part of the judgment which requires defendants to line with cement or water-tight flume or conduit the old ditch across plaintiff's land, constituting about 200 linear feet, is the testimony of plaintiff and his father. They testified that, after the water was diverted through the new ditch, it flowed less freely than when the water coursed through the old ditch. The watermaster, who was in charge of the distribution of irrigation water flowing through the ditch, testified that the water flowed more freely in the new ditch than in the old ditch. We have already given the substance of Engineer Tanner's testimony upon this phase of the case.

A careful consideration of all of the evidence in the record convinces us that the defendants are not liable for any injury done by seepage water that may have escaped from the old ditch where it crosses plaintiff's land. There is no substantial evidence that any negligent acts of defendants caused any additional seepage water to escape from the old ditch. Until it is made to appear that the change made in the irrigation ditch constitutes an invasion of plaintiff's rights because of a change in the extent or manner of the use of the old irrigation ditch, the plaintiff is not entitled to a judgment requiring the defendants to line the old ditch

with cement or a water-tight flume or conduit. Upon the record now before us, we are of the opinion that defendants may not properly be required to place any improvement in the old irrigation ditch across plaintiff's land as a condition to the right of the defendants to course the water through the new irrigation ditch.

As already indicated, a somewhat different question is presented with respect to that part of the new ditch which lies parallel with and near the northern boundary line of plaintiff's premises. The judgment appealed from enjoins defendants from diverting into or running any water through this part of the new ditch unless it is lined with cement or water-tight flume or conduit. It will thus be observed from the terms of the judgment that defendants may not use this ditch for the irrigation of the triangular tract of land unless the ditch is first made water-tight by cement lining, flume, or conduit. Nowhere is it made to appear what will be the probable cost of this improvement. If the improvement is made, we entertain very grave doubts that the desired result will be accomplished unless defendants are also prevented from irrigating the adjoining land. It would seem probable, and there is no evidence to the contrary, that, when the water is turned out of the ditch onto the adjoining land, the same difficulty will be experienced with water seeping into the basement of plaintiff's dwelling house and premises that has been experienced when the water is running in the ditch. To make the bottom and sides of the irrigation ditch impervious to water, and then cover all of the land immediately adjoining the ditch with water, would not seem well calculated to prevent the injury which the plaintiff here complains he has suffered. Obviously defendants should not be required to expend their labor and money unless to do so will tend to prevent injury to plaintiff's premises. The law does not look with favor on requiring one to do a useless thing. Defendants cannot be held liable for negligence or the want of ordinary care unless it is made to appear that, except for the negligence

or want of ordinary care on the part of defendants, the injury complained of would not have occurred.

The record before us discloses that defendant L. C. Breeze, as soon as he learned seepage water was entering the basement of plaintiff's house, offered to construct, at his own expense, a tile drain on plaintiff's land near and parallel with the new ditch, thence south along the eastern boundary of plaintiff's land, and thence into the pond which is located about 200 feet southeasterly from plaintiff's dwelling house. The plaintiff refused to grant Breeze permission to construct the drain and rejected the offer. The only reason assignd by the plaintiff for rejecting the offer was that he did not want drainage water emptied into the pond. The pond is apparently not located on plaintiff's land. It has a drain leading from it, which, for some reason not appearing had become clogged up. According to plaintiff's theory, seepage water from the new ditch passes through and damages his premises and finally lodges in the pond. Just why the proposed drain would not prevent the injury complained of by the plaintiff and at the same time add no appreciable amount of water to the pond is not made to appear. The plan suggested by Breeze was to excavate a trench, lay the tile drain in the trench and then fill in the trench. It is not made to appear that such a drain would interfere with plaintiff's premises or would not be effective in preventing injury to his premises. The plaintiff may not prevent defendants from using the only effective means of avoiding injury to him and then recover because he is injured. The case, however, was not developed as to this theory or as to such subject. The record is so meager as to what effective reasonable efforts the defendants could or ought to have exerted to prevent injury to plaintiff's premises that we have concluded not to dispose of the case on its merits upon the present record.

We are of the opinion the judgment should be reversed. Such is the order. The cause is remanded to the trial court,

with directions to grant a new trial. Appellants are awarded their costs on appeal.

THURMAN, C. J., and STRAUP, J., concur.

CHERRY, J. (dissenting). I am unable to agree fully with the prevailing opinion and judgment. I see no reason for reversing the plaintiff's judgment for damages. That judgment as determined by the majority, is within the amended pleadings. I think the judgment is also supported by ample evidence. It was clearly proved that the defendants conducted water in a ditch which was constructed through loose sand and gravel, incapable of holding water, and took no steps to prevent or control seepage therefrom, and that the water seeped and escaped from the ditch to the plaintiff's land, destroying his crops and injuring his house and cellar. That this constitutes negligence has been decided by our own and numerous other courts. *Jensen* v. *Davis & Weber Counties Canal Co.*, 44 Utah 10, 137 P. 635; *Turpen* v. *Turlock Irr. Co.*, 141 Cal. 1, 74P. 295; *Tormey* v. *Anderson-Cottonwood Irr. Dist.*, 53 Cal. App. 559, 200 P. 814; *Shields* v. *Orr Extension Ditch Co.*, 23 Nev. 349, 47 P. 194; *Calvert* v. *Anderson,* 73 Mont. 551, 236 P. 847.

The proposition that the plaintiff's judgment for damages cannot stand because he refused to permit defendants to dig a drain upon his land to dispose of the leakage and seepage from defendants' ditch is, in my opinion, erroneous and against well-settled principles. The case is not within the doctrine that a plaintiff cannot recover for consequences that he could avoid by the exercise of reasonable precautions or ordinary care. The limitations of that rule and its inapplicability to cases like the one under consideration are well stated in *McCarty* v. *Boise City Canal Co.,* 2 Idaho 245, 10 P. 623, as follows:

"The theory and claim of defendant is that the plaintiff was under a legal obligation to dig a ditch upon her own premises, if it could be done at a small expense, and thus conduct the said seepage from defendant's ditch off from her land. If this be true, then it results

that ditch owners have such a dominion over the lands through which their ditch is located as gives them not only a right of way for lateral ditches to conduct off water escaping from their main ditch through the adjoining land, but also that such escape ditches shall be maintained by such adjoining owners, providing that it can be done at a small expense. We do not understand that the doctrine relied on can be extended so far. The plaintiff is entitled to control her own premises. [Citing cases.]

"We understand the rule to be that, where one person suffers injury by the carelessness of another, occurring unexpectedly, and in a transitory manner, the one so suffering must go to some trouble to avoid or lessen the damage, if a temporary expedient or slight expense will do so; but, if the one whose carelessness or negligence causes a continuing injury to another, having knowledge of the evil and the cause of it, deliberately stands by, having an equal opportunity to prevent the damage as the one suffering it, and permits it to continue without an attempt to prevent it, he cannot avoid his responsibility by showing that the one injured might have avoided the damage by a slight expense." [Citing cases.]

This case is approved and followed by the Supreme Court of Nevada in *Shields* v. *Orr Extension Ditch Co.*, supra.

In *Waters* v. *Kear*, 168 N. C. 246, 84 S. E. 292, the syllabus is:

"The owner of land on which surface waters were wrongfully diverted by defendant is not required by law to permit defendant to dig a ditch through the land, or to dig the ditch himself in order to lessen the damages caused by the wrongful diversion."

See, also, *Cardwell* v. *Norfolk & W. Ry. Co.*, 171 N. C. 365, 88 S. E. 495; *Borden* v. *Carolina P. & L. Co.*, 174 N. C. 72, 93 S. E. 442.

In *Norfolk & W. Ry. Co.*, v. *Amicon Fruit Co.*, 269 F. 559, 14 A. L. R. 547, the Circuit Court of Appeals, Fourth Circuit, affirmed a judgment for $7,000 damages suffered by plaintiff by reason of water leaking from defendant's pipe line into plaintiff's storage basement, notwithstanding a showing that the plaintiff at a cost of some $250 could have constructed a drain from its basement to a public

sewer and thereby avoided in the main the injury complained of, citing *Pixley* v. *Clark*, 35 N. Y. 520, 91 Am. Dec. 72, where the court said:

"The defendants also insist that the injury might be remedied by the plaintiff, at small cost, by digging a drain along the embankment. If this were true, he is not bound to do it. As the defendants caused the damage, without authority, and for their own benefit, they should find the remedy at their own expense."

It may be further stated that the question is not presented here by any appropriate exceptions or assignments of error, and is not even urged in appellants' brief. No complaint is made of the amount of damages found, and, for all that appears in the record, the trial court may have materially reduced the damages suffered by reason of the plaintiff's refusal to permit the drain to be constructed.

I see no sufficient reason for reversing the judgment for damages. I think the injunction should not have been issued. The evidence was that from natural causes the leakage and seepage from the canal would gradually diminish by the use of the ditch. Nothing appeared to show that plaintiff could not have adequate relief at law for future injuries. The threatened injury to plaintiff, under the circumstances, did not warrant the issuance of an injunction. I can see no propriety or necessity for granting a new trial. In my opinion, the judgment for damages should be affirmed and the injunction dissolved.

GIDEON, J. (dissenting). I agree with the conclusions reached by Mr. Justice CHERRY that no sufficient reason is made to appear authorizing a reversal of the judgment awarding plaintiff damages.

The plaintiff was permitted to amend his complaint after the testimony was closed and during the time the trial court had the case under advisement. Allowing that amendment is held not to have been error. The allegations in the amendment to the complaint are:

"That said new ditch was carelessly and negligently constructed through gravelly, porous, sievelike materials, without making provision to prevent the water seeping and percolating through the sides and bottom thereof, and the water was turned therein by the defendants when said ditch would not hold or carry the same."

These allegations are in legal effect the same as the allegations charging negligence in the complaint in *Jensen* v. *Davis & Weber Counties Canal Co.*, 44 Utah 10, 137 P. 635. This court affirmed the judgment for damages in that action.

The third headnote to *Tormey* v. *Anderson-Cottonwood Irr. Dist.*, 53 Cal. 559, 200 P. 814, is as follows:

"To knowingly construct a canal through loose sand or gravel incapable of holding water, without taking any steps to prevent or control seepage therefrom, constitutes negligence."

It thus appears that the complaint in this action, as amended, charges the defendants with negligence in the construction of the canal and in turning water into the same.

I do not understand, however, that the majority opinion holds or intends to hold that the complaint does not charge the defendants with negligence. It is stated in the opinion:

"It is plaintiff's contention that one who constructs a ditch through soil naturally incapable of holding water is bound to exert reasonable efforts to prevent seepage water from injuring the property of another and that a failure to do so constitutes negligence. We are of the opinion that this is a correct statement of the general rule of law as laid down by the authorities." (Citing cases.)

It is also said in the opinion:

"The evidence also shows that some seepage water from the new ditch seeped into the basement of plaintiff's house. There is also sufficient evidence in the record to justify findings that the seepage water from the new ditch caused injury to plaintiff's dwelling house as well as to his land and the crops growing thereon."

Further on in the opinion it is said:

"Plaintiff's evidence tends to support a finding that the new ditch was constructed through soil which was porous, and hence likely to and did permit the escape of considerable seepage water into plaintiff's property during the first year of its use and somewhat less during the second year."

It thus appears that the complaint charges defendants with negligence. The court's findings are to the effect that the negligence charged in the complaint was proven and that injury resulted to plaintiff by reason of such negligence. If the judgment awarding damages is to be reversed, it must necessarily be on some other ground rather than failure to charge or prove negligence and injury. I am unable to find any legal reason assigned in the opinion of the court why the judgment of damages should be disturbed.

It is also said in the court's opinion:

We are unable to ascertain from a reading of the evidence in this case just what reasonable efforts the plaintiff claims the defendants should, in the exercise of reasonable care, have exerted to prevent the escape of seepage water from the new ditch."

If by that statement it is intended to hold—and that seems the only reasonable and fair inference—that it was incumbent upon the plaintiff to allege and prove the act or acts that defendants should have done or performed to prevent the injury, then I am unable to agree that such is the rule of law required in charging or proving negligence. The negligence with which the defendants were charged was constructing the ditch through porous and gravelly material without making any provision to prevent the water seeping or percolating from the ditch so constructed. Such an allegation, as I understand the authorities, charges negligence.

I am not convinced that the court erred in the injunctive relief granted. The trial court in this case not only heard the evidence, but on at least two occasions viewed the

premises, and his decree was made thereafter. From such inspection the court could see the nature of the soil and the general appearance of the surrounding premises, and thus determine what was required to safeguard plaintiff's premises from repeated injury by reason of the use of this canal for carrying water to defendants' lands and to the lands lying beyond and below defendants' lands.

In the course of the opinion in *Stoops* v. *Pistachio*, 70 Cal. App. 772, 234 P. 423, it is said:

"Where a property owner by artificial means brings water upon his lands for purposes of irrigation, and allows a portion of such water to escape so as to injure the land of the adjoining owner, he is not only liable in damages for the injury caused, but an injunction will lie to prevent the continuation of such injury. *Bacon* v. *Kerney Vineyard Co.* [*Kearney Vineyard Syndicate*], 1. Cal. App. 276, 82 P. 84; *Kall* v. *Carruthers*, 59 Cal. App. 555, 211 P. 43. As said in the case last cited, to permit defendants to make their land profitable though it result in the utter destruction of the usefulness of plaintiff's land, would violate every principle of natural right and justice, and cannot be supported by judicial authority."