CLARKSON, J., dissenting.
CONNOR, J., concurs in the dissent. *Page 461 
The defendant owned a filling station near Chadbourn, and on or about 12 December, 1930, entered into a written agreement with the plaintiff by the terms of which the plaintiff was to operate the filling station. The written instrument stipulates:
1. "The company leases to the dealer for installation and use . . . three Wayne Motor Pumps; three 550 U. G. tanks; one metal day sign complete, one certified service sign, one gold motor oil sidewalk sign; four M-15 lube oil units. Said equipment is leased at dealer's request to be used by him on said premises for storage and sale of petroleum products purchased solely from the company, but at all times is to remain the property of the company."
2. "The dealer shall at his expense, keep said equipment in good order and repair and not encumber or remove said equipment, or do or permit anything to the prejudice of the company's title; . . . exonerate the company and hold it harmless from all claims, suits and liabilities of every character whatsoever and howsoever arising from the existence of such equipment."
3. "The dealer shall return said equipment to the company at the termination of this agreement in good condition."
It was further provided that "the expense of installing this equipment shall be made by the dealer. . . . The company acknowledges receipt of one dollar from dealer for such expense. If actual installation costs exceed the amount above specified, the dealer shall pay the company the amount of such excess promptly upon completion of the installation. If amount above specified exceeds actual cost of installation, the company shall promptly refund to dealer such excess."
The evidence tended to show that the plaintiff began the operation of the filling station and on 11 May, 1931, brought this suit, alleging that the defendant had negligently furnished the plaintiff Wayne Electric Pumps for the sale of gasoline, but that such pumps were defective in that they did not correctly measure gasoline purchased by customers, and that as a result of such defect, plaintiff had suffered loss in the sum of $1,500. It was also alleged that the defendant had required the plaintiff to buy a certain uniform for the sum of $13.00.
The defendant set up the written agreement as a bar to plaintiff's right to recover and denied all negligence alleged in the complaint.
The plaintiff testified that the tanks were installed and had been used previously by another person, and that he was required to buy gasoline exclusively from the defendant and was to receive two cents per gallon. He further testified that "the measuring apparatus was out of repair and would give over and the dial would stick and not even turn. . . . I lost about one-third of the gasoline I sold." *Page 462 
Another witness for plaintiff testified about the tanks and said: "They did not measure correctly. . . . The motor would not start part of the time. There was nothing broken about the pumps. . . . I was there when these pumps were installed by Mr. Foster. He did not leave them all right. I think it gave about one point over 5 gallons when it first started off. The pumps were installed about 2 weeks before Burnett got it."
The plaintiff further testified that when he discovered that the equipment did not correctly measure gasoline that he made complaint to the defendant, and that it sent an agent to "fix the tank. . . . They measured all right while he was there, but he only worked on one tank, and the other was not right. They would freeze up at night and would not work, and we would have to wait until a mechanic came the next morning and start them up. People came there to work on these tanks in response to my complaints around a dozen times and up until the new tanks were put in."
The following issues were submitted to the jury:
1. "Did the defendant furnish to the plaintiff for use at the Chadbourn Filling Station electric pumps and gas tanks?
2. "If so, did such pumps operate so as to deliver more gas to the customer than shown on the indicator thereon?
3. "If so, what damages, if any, is plaintiff entitled to recover on account thereof?
4. "In what sum, if any, is the defendant indebted to the plaintiff on account of money deposited for the suit of clothes, set out in the complaint?
5. "Did plaintiff execute the agreement, or contract, dated 12 December, 1930, and marked Exhibit 2?"
By consent the court answered the first issue "Yes," the fourth issue "$13.12 with interest from 31 April, 1931," and the jury answered the second issue "Yes," the third issue "$400.00," and the fifth issue "Yes." The court being of the opinion that the answer to the fifth issue constituted a bar to recovery, rendered judgment that the plaintiff recover the sum of $13.00 with interest and costs, from which judgment the plaintiff appealed.
The records of this Court and of courts generally, disclose a variety of contracts between oil companies and the operators of filling stations. The written contract between the parties specified that *Page 463 
the defendant leased the equipment to the plaintiff "for installation and use." Although the contract further provided that the alleged lessee should keep the equipment in repair, nevertheless it was the duty of the defendant to furnish to the plaintiff equipment reasonably suitable for the purposes contemplated by the parties. The defendant was desirous of selling its products, if possible, and undertook to furnish equipment for hire to facilitate such sale. Consequently it knew that the installation or furnishing of defective equipment would occasion loss to the operator or dealer. Manifestly, if defects developed after installation and furnishing, it was the duty of the plaintiff to make repairs, but there is no evidence in the record tending to show that the equipment so furnished was defective at the time it was placed in the custody of the plaintiff. See Andrews v.Oil Company, ante, 268, 12 A.L.R., 766, et seq.: 61 A.L.R., 1333, etseq., and Rushing v. Texas Co., 199 N.C. 173, 154 S.E. 1.
Notwithstanding the liability imposed by law, the plaintiff signed an agreement contracting to "exonerate the company and hold it harmless from all claims, suits and liabilities of every character whatsoever and howsoever arising from the existence of such equipment." There is no allegation of fraud or mistake, or other available equity, and hence the contract which the parties have made, must be interpreted according to its terms. The language referred to is broad and comprehensive and clearly imports a release from claims arising from the existence of the equipment. Therefore, the principle of law declared in Singleton v. R. R.,203 N.C. 462, is applicable and determinative.
No error.