## JANKELE et al. v. TEXAS CO.

No. 5469.   Decided February 17, 1936.   (54 P. [2d] 425.)

*Romney & Nelson,* of Salt Lake City, and *Orval Hafen* of St. George, for appellant.

*Ellis J. Pickett,* of St. George, for respondents.

EPHRAIM HANSON, Justice.

Plaintiffs were the owners of a small tract of land in the town of Washington, Washington county, Utah. Defendant, a dealer in gasoline and oil products, in April, 1930, entered into a written agreement with plaintiffs for the installation by it of a gasoline tank and pump on plaintiff's land, and agreed to furnish to plaintiffs its gas and oil for sale to the motoring public. The installation was duly made by defendant's agent. In May, 1931, plaintiffs noticed a

difference between the amount of gasoline received and that sold. This difference continued until September, 1931, when the agent of defendant was called in, the tank exhumed, and a break found in the gasoline line. It is contended by plaintiffs that the break in the gasoline line was due to defendant having installed a solid joint in the line instead of a swinging joint or swinging "L." Plaintiffs claim that a swinging joint allows for the settling of the tank in the excavation and will not break when the settling takes place. Plaintiffs recovered a judgment for the sum of $615. To reverse the findings and decree of the trial court, defendant brings this appeal.

The first ground upon which a reversal of the judgment is sought is that defendant did not make the installation; that the installation was made by one William Stevenson personally, for and on his own account. The complaint alleges that the plaintiffs contracted with the defendant for the installation by defendant company of various gasoline pumps and other equipment for the handling and distribution of petroleum products at and on the property of the plaintiffs in Washington, Washington county, Utah; said equipment to be installed by defendant company and used by plaintiffs for the sale of defendant's products, consisting of gasoline and oil.

The answer sets forth that William Stevenson, an employee of defendant company, installed a pump and auxiliary equipment known as a Wayne No. 515 hand and air pump for plaintiffs in excavations made by plaintiffs, and alleges "that said pump and equipment were installed under equipment lease duly executed on April 11, 1930, by plaintiff and defendant which provided, among other things, that the plaintiffs were at their expense to keep said equipment in good order and repair." The lease referred to was introduced in evidence and recites that the expense of installing this equipment shall be paid by the dealer, and that the defendant company acknowledged receipt of $200 from the dealer as an advance for such expenses, and that, if the ac-

tual installation costs exceed the amount above specified, the dealer shall pay the company the amount of such excess promptly upon completion of installation, and, if the amount specified exceeds actual cost of installation, the company shall promptly refund to the dealer such excess.

The testimony shows that Mr. Stevenson was the agent of the defendant at the time the contract was entered into and at the time of the installation. Mr. Stevenson testified that it was against the company's rules and against the "code of ethics" for him to make the installation for the company, and that he did the installing as a personal matter and at his own expense and not as agent for the defendant. In view of the answer of the defendant and in view of the evidence that Stevenson was the agent of the defendant in making the installation, we feel the court was justified in making the finding which it did that the installation was made for the plaintiffs by the defendant company. *Anderson* v. *Salt Lake City*, 79 Utah 324, 10 P. (2d) 927; *Wasatch Livestock Loan Co.* v. *Lewis & Sharp*, 84 Utah 347, 35 P. (2d) 835, at page 841; *Busby* v. *Century Gold Mining Co.*, 27 Utah 231, 75 P. 725; *Hague* v. *Juab County Mill & Elev. Co.*, 37 Utah 290, 107 P. 249; *Public Utilities Commission* v. *Jones*, 54 Utah 111, 179 P. 745; 1 Bancroft's Code Pleading, § 429, p. 626, and cases there cited.

The defendant next asserts that it is absolved from liability because the contract between the plaintiffs and defendant contains the following provision:

"The dealer shall * * * at his expense keep said equipment in good order and repair; * * * exonerate the company and hold it harmless from all claims, suits and liabilities of every character whatsoever and howsoever arising from the existence or use of said equipment."

The defendant cites and relies chiefly upon the case of *Burnett* v. *Texas Co.*, 204 N. C. 460, 168 S. E. 496, 497, which construes a similar contract. A reading of that case,

however, does not support appellant's theory. The court in its opinion says:

"Although the contract further provided that the alleged lessee should keep the equipment in repair, nevertheless it was the duty of the defendant to furnish to the plaintiff equipment reasonably suitable for the purposes contemplated by the parties. The defendant was desirous of selling its products, if possible, and undertook to furnish equipment for hire to facilitate such sale. Consequently it knew that the installation or furnishing of defective equipment would occasion loss to the operator or dealer. Manifestly, if defects developed after installation and furnishing, it was the duty of the plaintiff to make repairs; but there is no evidence in the record tending to show that the equipment so furnished was defective at the time it was placed in the custody of the plaintiff."

It is quite clear from the above quotation that the court was dealing with a case where the equipment became defective after it had been turned over to the lessee, and not with a case where the equipment was defective when furnished, nor with a case of defective or improper installation.

The other cases cited by appellant are between landlord and tenant and have no application here. In the case at bar the question is not as to liability arising from the use of leased property, but arises from a defective and improper installation by the defendant. If the defendant undertook to and did install the equipment in a negligent manner, then it would be liable to the plaintiffs for damages occasioned by reason of that negligent installation. The contract does not pretend to relieve the defendant from damages occasioned by reason of improper and negligent installation. No such construction can be given to the contract. It is very doubtful that defendant could relieve itself by contract from its own negligence. Ordinarily such contracts are contrary to public policy.

"Undoubtedly contracts exempting persons from liability for negligence induce a want of care, for the highest incentive to the exercise of due care rests in a consciousness that a failure in this respect will fix liability to make full compensation for any injury resulting from

the cause. It has therefore been declared to be good doctrine that no person may contract against his own negligence." 6 R. C. L. § 132, p. 727, and cases there cited.

There are certain exceptions to this rule, but those exceptions we need not be concerned with here.

The appellant next contends that the evidence does not warrant a finding by the court that the defendant was negligent in the installation of the equipment in question. The evidence shows that the directions for installing such equipment called for a swinging joint instead of a solid joint. The testimony further shows that the reason given by Mr. Stevenson for making a solid joint instead of a swinging joint at the time the installation was made was because he was unable to obtain a swinging joint either at St. George or Cedar City. At the time the break was discovered, Mr. Stevenson said that it was a poor installation, that a swinging "L" should have been used. Other testimony showed that a solid joint would not allow for settling, would be likely to break when settling occurred, and that it was customary and usual in installations of a similar kind to use a swinging joint or "L." We feel that the evidence is quite ample to support a finding that the installation was negligently done.

The question in the case which is fraught with most difficulty is whether or not the evidence as to the amount of damages is sufficient to sustain the findings of the court. It appears that in May the plaintiff observed a considerable discrepancy between the amount of gas sold and that received. This discrepancy continued during June, July, August, and into September. In September, Mr. Stevenson, the agent of the company, was sent for and an attempt was made to fill the pump, but it was then found that there was something the matter and the tank was dug up. The plaintiffs and Stevenson then checked the cash register showing the sales with the slips showing the amount of gasoline received and determined that there had been

a loss of 3,363 gallons, amounting to $615. One of the plaintiffs, Mr. Jankele, testified that, by checking the amount of gasoline received from the defendant with the sales that had been made, the amount lost through leakage could be accurately determined, and that $615 represented the correct amount. The other pumps were examined and found to be satisfactory. The testimony is quite clear that the loss was from the pump in question.

Complaint is made that the findings are insufficient to support the judgment and that the findings are not sufficiently definite. So far as relates to the material issues here, the court found that on or about April 10, 1930, the plaintiffs contracted with the defendant for a valuable consideration for the installation by the defendant of various gasoline pumps and other equipment at the service station of plaintiffs in Washington, Washington county, Utah, which equipment was to be used by the plaintiffs for the sale of defendant's products, consisting of gasoline and oils; that, in the installation of one of the pumps above referred to, one No. 515 Wayne hand or air pump, the defendant carelessly and negligently installed the same contrary to the general custom and practice and instructions of installations of gasoline pumps, and used in one of the underground connections from the storage tank to the auxiliary tank a rigid elbow instead of a swinging elbow, well knowing at the time of installing the rigid elbow at said point that it was contrary to the general custom and practice and directions for installing said pump, and well knowing that in all probability the settling of said tanks would cause break in said elbow, thereby causing a loss of contents of said tank and consequent damage to plaintiffs; that the installation was carelessly and negligently made by the defendant, as set forth above; and that thereafter the said elbow did break, which caused damage to the plaintiffs in the loss of gasoline in the months of May, June, July, August, and September of 1931. Then is set forth the number of gallons lost during each of said months and the cost of

said gasoline so lost through the carelessness and negligence of the defendant, and the amount which the plaintiffs paid to the defendant for the gasoline so lost.

Whether or not the installation was improperly and negligently made and whether there was a loss as a result of said installation were the issues which the court was trying. In *Fuller* v. *Burnett*, 66 Utah 507, 243 P. 790, this court said that findings of a trial court sitting without a jury should be limited to ultimate facts to be ascertained, and are none the less findings of fact because drawn as conclusions from other facts. In *Stephens* v. *Doxey*, 62 Utah 241, 218 P. 965, this court held that findings ascertaining ultimate facts upon which judgment rested were sufficient though not attempting to follow the language of the pleadings. In *Prows* v. *Hawley*, 72 Utah 444, 271 P. 31, 33, the court lays down the following: "The general rule is that ultimate facts may be stated in the findings in the same way they are stated in the pleadings if there well and sufficiently stated, not by a mere reference to the pleadings, but stated in the language of the pleadings." See, also, 2 Bancroft's Code Prac. & Rem., §§ 1679, 1680, pp. 2158, 2159. The findings, though not as full and complete as might be desired, sufficiently conform to the pleadings and the evidence to support the judgment.

Appellant next insists that the plaintiff did nothing to minimize the loss, and for that reason are not entitled to recover the amount which the court found was due them. Appellant says that plaintiffs did nothing until September 4, 1931, to investigate whether the tank was leaking or not, and that they failed to take any measures to mitigate their damages arising from leaking during the months it was alleged the loss occurred. It is, of course, true, as asserted by appellant, that one who is injured in his person or property by the wrongful or negligent acts of another is bound to exercise reasonable care and diligence to avoid loss or to minimize the resulting damage, and that to the extent that his damages are the result of his active

and unreasonable enhancement thereof, or are due to his failure to exercise such care and diligence, he cannot recover. One who has been injured by the wrongful or negligent acts of another is bound to protect himself, if he can do so with reasonable exertion or at trifling expense, and he can recover from the delinquent party only such damages as he could not, with reasonable effort, have avoided. 8 R. C. L. 442, 443.

"The efforts, however, which the injured party must make to avoid the consequences of the wrongful act or omission need, however, only be reasonable under the circumstances of the particular case, his duty being limited by the rules of common sense and fair dealing. * * * The test is what would an ordinarily prudent man be expected to do under like circumstances." 17 C. J. § 96, p. 767, and cases there cited; also *Belnap* v. *Widdison*, 32 Utah 246, 90 P. 393.

The evidence shows that the plaintiffs were operating and selling gasoline from three different pumps. The tanks were all buried. When plaintiffs first began to note the discrepancy between the amount of gas sold and that received, they called the attention of it to the agents of defendant who were delivering the gas, and that agent replied: "That is what they always say, these service stations, they can't check up." Plaintiffs made an attempt to check the tank wagon which furnished the gas and on one occasion found it was short 17 gallons; on another occasion it was short 3 gallons. These amounts, however, were made good by the defendant.

In August it was observed that the ground in the neighborhood of the tanks became powdery and took on a different appearance from adjoining ground, but there was no odor of gasoline and nothing to indicate that the condition of the soil was due to gasoline leaking from the tanks. On September 4th, the driver of the tank wagon at the request of plaintiffs attempted to fill the tank so it would run over, but found he could not do so and quit. That particular pump was then shut down. On the 10th of September, it was

reported to the agents of defendant that there was something wrong in the Bowser, and on that day the agent attempted to pour in about 25 gallons in 5-gallon buckets and said, "There is something wrong." It was then that the tank was exhumed and the break for the first time discovered.

The evidence shows that, with a break of the kind described in the line, the pump would still work, and there was nothing except the loss of the gasoline to indicate where this loss was coming from. It appears that, under the circumstances as shown by the evidence, plaintiffs were doing all that could reasonably be expected of them to discover what occasioned the loss. As soon as the real cause of the loss was discovered, it was at once corrected. We are not inclined to the view that plaintiffs did not use reasonable care to minimize their damages.

The judgment of the trial court is affirmed; respondents to recover their costs.

ELIAS HANSEN, C. J., and FOLLAND and MOFFAT, JJ., concur.

WOLFE, Justice (concurring in part; dissenting in part).

I concur in the holding that the findings of agency must be upheld because the answer itself states that "on or about April 5th, 1930, Wm. Stevenson, employee of defendant company, installed a pump," etc. And in the answer the defendant admits the allegation of the complaint that "plaintiffs contracted with defendant company, for a valuable consideration, through its agent Wm. Stevenson, for the installation by defendant company of various gasoline pumps," etc. If it were not for the pleadings asserting and admitting agency in the installation of the pumps, the finding of agency could not be upheld because the evidence which was admitted is contrary thereto.

I also concur in the holding that the language of the equipment lease of April 11, 1930, did not absolve the defendant

from liability for negligent installation if its duty was to install the pump. The contract of plaintiffs was to exonerate from liabilities "arising from the existence or use of said equipment" and not from a liability incurred in bringing the installed pump into existence. I also concur in the holding that there is sufficient evidence to support a finding of negligence in the installation.

I think the judgment is excessive. The complaint alleged that plaintiffs during the months of May, June, July, August, and September, 1931, lost considerable quantities of gasoline which they could not account for. It proceeds to allege that they complained to the defendant company, but the latter refused to investigate or determine the cause of said loss until on or about the 15th day of September, 1931. During much of this time Mr. Jankele tells us he believed from his bank deposits from gas sales as compared to deliveries made to him that gas was escaping from somewhere in his three pumps. It would appear to have been a very easy matter for him to fill up each tank and keep a record of all the amounts sold from such tank until empty. This would certainly have apprised him of the leak. Yet he did not do so, but states that he notified Stevenson and the tank wagon men and that they refused to investigate. The contract of April 11, 1930, required him at "his expense to keep said equipment in good order and repair." While this would not impose on him the responsibility for a leak due to defendant's negligent installation, certainly, until the excavation in September, 1931, he would not know whether it was due to a negligent installation or otherwise that gas was leaking away. There was an implied duty on his part to discover whether the pump needed repairing; otherwise he could not fulfill his duty to repair when it devolved on him. Yet he excuses his neglect to ascertain the source of the dissipation by saying he notified the company to investigate. He had the duty to move timely and endeavor to mitigate his loss and therefore his damages. He cannot charge the defendant with the total loss during this whole period, but only during

that period within which he could reasonably have discovered that there was a leak and ascertained its cause and had it repaired. This appears, at the latest, to be in July, when he was losing about 49 gallons a day and definitely concluded he had a leak. After that he could not sit supinely by waiting for the defendants to find his leak and charge them with all losses up to the time they discovered it in September.

I think assignment No. 17 directed at finding No. 4 is sufficient to present the question of whether plaintiff did what he reasonably could to mitigate his damages. The evidence shows that by the middle of July plaintiff definitely concluded there was a leak. He should then have moved to discover in which tank it was. The gasoline lost in May was 581 gallons; in June 403 gallons; July 1,507 gallons. If we figure that half of the July losses occurred up to July 15th, the total loss to that time would be 1,797 gallons. At the average price of 18.287 cents per gallon (procured by dividing the judgment of $615 by the total lost gallonage claimed), the damages would be $328.62. Unless the plaintiffs consent to remit $286.48 of their judgment, I think the case should be reversed and remanded for a new trial.