GLOBAL RECREATION, INC., et al.,
Plaintiffs and Respondents,

v.

CEDAR HILLS DEVELOPMENT
COMPANY et al., Defendants
and Appellants.

No. 16685.

Supreme Court of Utah.

June 25, 1980.

Jeril B. Wilson, Provo, for defendants and appellants.

Heber Grant Ivins, American Fork, for plaintiffs and respondents.

STEWART, Justice:

Plaintiffs were awarded judgment by the trial court for unpaid sales commissions for the sale of real property. The court dismissed defendants' counterclaim to recover commissions previously paid. Defendants appeal on the ground that the trial court erred in ruling in favor of plaintiffs on the complaint and the counterclaim because plaintiffs had no broker's license, and the agreement between Global Recreation, Inc. ("Global") and Associated Industrial Developers, Inc. ("AID"), which provided for payment of real estate commissions, was therefore void.

In September 1976 defendant AID and plaintiff Global entered into a marketing agreement which gave Global the exclusive right to sell properties which were owned and to be developed by AID. Jerald Richardson, a principal in AID and a licensed real estate broker, signed the agreement for AID. Subsequent to the date of the agreement, AID entered into a partnership with defendant Near East Technological Services, Inc. The partnership commenced business under the name of Cedar Hills Development Company, which was also named a defendant. The property subject to the marketing agreement was known as the Town of Cedar Hills.

Plaintiff Eldon P. Hendricks, a licensed real estate broker, became associated with Global in April 1977. Stan Snarr, another plaintiff, was a licensed real estate agent whose license showed him to be associated with AID but who was employed and paid by Global. Pursuant to the marketing agreement plaintiffs received total commissions in the amount of $79,127.20, approximately $34,000 of which was paid by AID prior to April of 1977, when a licensed broker joined Global.

The transaction which precipitated the present action occurred in November 1976 when Snarr sold a portion of the AID property to Wincor Development, Inc. A sales agreement was executed showing AID as the seller and broker and Snarr as the agent. Global received a partial commission on the sale. However, because agreed-

upon improvements were not made, the tract of property was never conveyed. Defendants state that at the time the marketing agreement was executed and at the time of the Wincor transaction, neither Snarr nor Global was a licensed real estate broker, and the agreement was therefore void. Defendants contend that consequently it had no obligation to pay a real estate commission. Defendants also argue that, in light of § 61–2–10, which makes it unlawful for a real estate salesman to accept consideration for his sales activities "from any person, except his employer, who must be a licensed real estate broker," Global and its employees were not entitled to receive the commissions paid by Cedar Hills Development Co.

The issue at the trial of this matter was whether Global, which had no licensed broker prior to April 1977, was entitled to a commission on the Wincor transaction. The parties stipulated that if the court found in favor of plaintiffs, the amount of the judgment should be $6,780.

Specifically, the defendants contend that (1) pursuant to § 61–2–18 U.C.A.[1] plaintiffs were not entitled to real estate commissions on the Cedar Hills transactions because they did not comply with the statutory licensing requirements of §§ 61–2–1 and 61–2–2, (2) plaintiffs lacked standing to bring this suit pursuant to § 61–2–18, and (3) in accord with § 61–2–17(b)[2] defendants should have been awarded a judgment on

their counterclaim for a sum of one to three times the amount of commission paid prior to April 1977. Defendants also assert that the trial court's findings of facts were inadequate to support the judgment for plaintiffs.

■ The judgment of the trial court in favor of plaintiffs was based on its findings that the parties' course of conduct, including defendants' acquiescence in the payment of commissions on the Wincor sale and other transactions, estopped defendants from objecting to the payment to plaintiff of the unpaid earned commission. However, it does not appear that estoppel was pleaded or placed in issue at trial, and the factual findings on estoppel are inadequate. Nevertheless, the judgment is sustainable on grounds other than those relied on by the trial court. Those grounds have been argued and briefed by both parties in this Court, were also presented to the trial court for adjudication, and do not require resolution of disputed factual issues. In such circumstances it is appropriate for this Court to sustain the judgment, even though on grounds different from those relied upon by the trial court. *Allphin Realty, Inc. v. Sine*, Utah, 595 P.2d 860 (1979); *Limb v. Federated Milk Producers Assoc.*, 23 Utah 2d 222, 461 P.2d 290 (1969).

■ The record shows that Richardson was a principal of AID and had a broker's

---

1. Section 61–2–18, Utah Code Ann. (1953), provides:

   Unlicensed broker—Action for recovery of compensation prohibited—Action by real estate salesman.—(a) No person, partnership, association or corporation shall bring or maintain an action in any court of this state for the recovery of commission, a fee, or compensation for any act done or service rendered the doing or rendering of which is prohibited under the provisions of this act to other than licensed real estate brokers, unless such person was duly licensed hereunder as a real estate broker at the time of the doing of such act or the rendering of such service.

   (b) No real estate salesman shall have the right to institute suit in his own name for the recovery of a fee, commission, or compensation for services as a real estate salesman except where the action is against the broker

but any such action shall be instituted and brought by the broker with whom the salesman is connected.

2. Section 61–2–17(b) provides:

   In case any person, partnership, association or corporation shall have received any sum of money or the equivalent thereto, as commission, compensation or profit by or in consequence of his violation, of any provision of this act, such person, partnership, association or corporation shall also be liable to a penalty of not less than the amount of the sum of money so received and not more than three times the sum so received, as may be determined by the court, which penalty may be sued for and recovered by any person aggrieved and for his use and benefit, in any court of competent jurisdiction.

license. The Wincor sales contract shows AID as the broker company and Snarr as the licensed real estate agent acting for AID. Defendants, however, contend that Richardson acted as an owner, not as broker. Nevertheless, his status as a licensed broker is undisputed, and AID unmistakably held itself out as a broker in the Wincor transaction.

■ Although the broker-salesman relationship in this case may not comport with the usual broker-salesman relationship, we hold that the requirements of § 61–2–18 were met. AID, as seller and broker, did not receive a share of the commission, but it clearly received consideration in the form of profits on the property sales. In any event, for a valid broker-salesman relationship to exist, it is not necessary that the broker receive a portion of the commission paid for the sale of a property. The commission that was paid in this case went somewhat circuitously from Cedar Hills Development Co., in which AID was a partner, to Global, the sales entity. This arrangement, in our view, does not violate the licensing statutes because the salesman involved in the transaction and employed by Global was a licensed real estate salesman.

■ The purchasers of the Cedar Hills property were fully protected as contemplated by §§ 61–2–1 et seq., because both a licensed broker and a licensed salesman were involved in the land sales. The purpose of those provisions is not to protect real estate developers who seek relief from their own contractual obligations;[3] rather, it is for the protection of members of the public who rely on licensed real estate brokers and salesmen to perform tasks that require a high degree of honesty and integrity. The licensing requirements and the provisions designed to enforce compliance therewith are designed to assure such honesty and integrity.

■ Defendants also contend that Global and Snarr lacked standing to sue

AID for the commission because only a licensed real estate broker can sue a principal for a commission pursuant to § 61–2–18(a). *Morris v. John Price Associates, Inc.*, Utah, 590 P.2d 315 (1979); *Diversified General Corp. v. White Barn Golf Course, Inc.*, Utah, 584 P.2d 848 (1978). However, a licensed real estate salesman has the right to institute an action against a broker "with whom [he] is connected" "for services as a real estate salesman," § 61–2–18(b). The statute does not require that the salesman be employed by such broker. In this case Snarr is a licensed salesman who was "connected" with AID which held itself out as a licensed broker; as to them the provisions of § 61–2–18 are clearly met. In addition, we hold that Global had standing to sue the broker, AID, because it was entitled under its exclusive sales contract to a commission on a sale consummated by a licensed salesman. Furthermore, we note that Hendricks, a licensed broker, was associated with Global at the time the suit was brought. Plaintiffs' claim based on the Wincor transaction therefore meets the requirements of § 61–2–18.

■ Defendants also contend that the Wincor sale was not consummated and that therefore they did not, in any event, become obligated for the payment of a commission. The trial court, however, found that the sale was completed and the transaction was closed on November 23, 1976. As there is evidence in the record to support this finding, we do not disturb it.

■ Finally, defendants assert that their counterclaim for the recovery of commissions which had been paid for several other sales was improperly dismissed. The record is devoid of proof that those engaged in the sales of the properties were not licensed. AID failed in its burden of coming forward with the proof of a prima facie case. Accordingly the counterclaim was properly dismissed.

---

**3.** Plaintiffs contend that the statutory provisions do not apply in the present case because § 61–2–2, *supra*, excepts an owner who sells his own property from the broker require-

ments. We do not rule on the applicability of the statute to the instant facts in light of our disposition of the case.

The judgment of the lower court is affirmed. Costs to Respondents.

CROCKETT, C. J., and MAUGHAN, WILKINS and HALL, JJ., concur.