James D. CONDER, Plaintiff
and Appellant,

v.

A.L. WILLIAMS & ASSOCIATES, INC., a
Georgia corporation; Massachusetts
Indemnity and Life Insurance Compa-
ny, a Massachusetts corporation; and
Bryce D. Peterson, Defendants and Re-
spondents.

No. 860073–CA.

Court of Appeals of Utah.

June 25, 1987.

Dennis L. Wright, Roger D. Sandack, Giauque & Williams, Salt Lake City, for plaintiff and appellant.

Clifford C. Ross, Hanson, Dunn, Epperson & Smith, Salt Lake City, for defendants and respondents.

Before BILLINGS, JACKSON and ORME, JJ.

## OPINION

**BILLINGS, Judge:**

James D. Conder ("Conder") filed suit against A.L. Williams & Associates, Inc. ("Williams"), Massachusetts Indemnity and Life Insurance Company ("MILICO"), and Bryce D. Peterson ("Peterson") alleging five causes of action stemming from an employment contract. The district court granted partial summary judgment thereby dismissing the first cause of action alleging fraud and misrepresentation in the inducement of the contract. The remaining causes of action are before the district court. The court thereafter denied Conder's motion to amend the partial summary judgment and entered its judgment pursuant to Utah R.Civ.P. 54(b) from which Conder appeals. We reverse and remand for further proceedings.

### I.

First we must resolve a preliminary evidentiary matter. Both parties quoted extensively from the depositions of Conder in support of and in opposition to the motion for partial summary judgment which is the subject of this appeal. Williams and MILICO in their brief on appeal rely heavily on facts in these depositions. It is conceded, however, that the depositions were not published in the proceedings below. Although Williams and MILICO endeavor to characterize this oversight as a technical one, namely that of failing to formally move that the depositions be published, we cannot agree. After a close review of the record we find no evidence that the depositions were in fact ever filed with the district court, much less that the trial judge had actual access to the deposition transcripts when hearing and deciding Williams' and MILICO's motion for summary judgment. In this situation where the parties cite the same depositions to support conflicting versions of the facts, we believe that documentation that the trial judge had access to the deposition transcripts is essential.

Recognizing their error, Williams and MILICO filed a motion to supplement the

record to include Conder's depositions. The supreme court, after briefing on the merits, denied this motion on February 19, 1985.

The case was subsequently transferred to this Court pursuant to Utah Code Ann. § 78-2-2(4) (1987) and R. Utah Ct.App. 4A. When, as here, a case is transferred to us from the supreme court, we stand in that court's shoes for all purposes pertinent to the case. We become fully entitled to manage the case now before us. We are not bound by what the supreme court has thus far done in the case *merely* because it is the supreme court and we are, in other respects, a lower court.

However, the prior denial of the motion to supplement the record is now the "law of the case" and we decline to reconsider that decision. There are sound policy considerations supporting the "law of the case" doctrine and the principle that a court should not reconsider and overrule a decision made by a co-equal court. *Sittner v. Big Horn Tar Sands & Oil, Inc.*, 692 P.2d 735, 736 (Utah 1984). As Justice Zimmerman states:

> One branch of what is generally termed the doctrine of "law of the case" has evolved to avoid the delays and difficulties that arise when one judge is presented with an issue identical to one which has already been passed upon by a coordinate judge in the same case. "[O]rdinarily one judge of the same court cannot properly overrule the decision of another judge of that court." *Richardson v. Grand Central Corp.*, 572 P.2d at 397.

*Id.* at 736. *Cf. Daly v. Sprague*, 742 F.2d 896, 900 (5th Cir.1984) ("While the 'law of the case' doctrine is not an inexorable command, a decision of a legal issue or issues by an appellate court establishes the 'law of the case' and must be followed in all subsequent proceedings in the same case ... unless ... the decision was clearly erroneous and would work a manifest injustice.").

Our decision is mandated not only on legal grounds but also by practical concerns. In their appellate briefs, counsel disagree as to the facts which can be gleaned from Conder's depositions and this Court has no way to independently verify the facts. Furthermore, as is more fully developed in section IV of this opinion, even if the facts from the Conder depositions as cited by Williams and MILICO were taken as true, there are issues of material fact which preclude summary judgment. Finally, our decision should not cause undue delay. Our remand will allow this highly factual fraud action to be tried at the same time as the other claims remaining before the district court.

The depositions of Conder, therefore, are not part of the record and the facts contained therein are not legally before this Court.

## II.

The following facts are properly before this Court. In the early part of 1980, Conder had several conversations with agents of Williams and MILICO. Conder maintains that Williams and MILICO fraudulently misrepresented the nature of their business and thus his employment opportunities. Specifically, Conder alleges he was told that Williams was a full service financial company dealing in insurance, real estate, securities, gold, silver, and annuities and that he would have employment opportunities as an investment counselor in these areas. Relying upon these statements, Conder alleges he terminated his former employment and was induced to work as an agent of MILICO, as part of the Williams organization. As a result, he alleges he was deprived of income that he might have earned working in investment counseling with securities, annuities, gold, silver, and real estate.

Conder entered into a written agent agreement with Williams on March 10, 1980 which expressly limited Conder's authority to selling life insurance and annuities for MILICO. Conder's initial job training was in insurance. Conder continued to work for Williams believing, based upon the representations of Williams and MILICO, that his training in securities and other investment areas would begin later. At some point (not clear in the record), Conder

learned that Williams was not authorized to do business as a full service financial company, but only as an insurance agency. Conder claims that by the time he discovered that Williams was only an insurance organization, he had no other source of income, and continued to work for Williams to support his family. He was employed by Williams selling MILICO insurance from April, 1980 to September, 1981.

Conder filed suit on August 27, 1982 against Williams, MILICO, and Peterson [1] alleging, among other things, that based upon their fraudulent misrepresentations as to the nature of his employment opportunities, he was induced to terminate his prior employment and to enter into the agent's agreement and was deprived of income he might have derived from working in the area of securities and real estate investment counseling.

The court granted Williams' and MILICO's motion for partial summary judgment finding that Conder had failed to establish fraud as a matter of law.

### III.

Conder contends there were numerous issues of material fact before the trial court which precluded summary judgment on his fraud claim. Summary judgment should be granted only when it is clear from the undisputed facts that the opposing party cannot prevail. *Frisbee v. K & K Const. Co.,* 676 P.2d 387, 389 (Utah 1984); *see* Utah R.Civ.P. 56(c). In considering a summary judgment motion, the court must evaluate all the evidence and all reasonable inferences fairly drawn from the evidence in a light most favorable to the party opposing summary judgment. *Frisbee,* 676 P.2d at 389.

This Court must determine whether the undisputed facts properly before us support the trial court's conclusion that Conder, as a matter of law, could not have established a claim for fraudulent misrepresentation in the inducement of his employment contract.

### IV.

The essential elements in a fraudulent misrepresentation action are:

(1) [t]hat a representation was made;

(2) concerning a presently existing material fact;

(3) which was false;

(4) which the representor either

 (a) knew to be false, or

 (b) made recklessly, knowing that he had insufficient knowledge upon which to base such representation;

(5) for the purpose of inducing the other party to act upon it;

(6) that the other party, acting reasonably and in ignorance of its falsity;

(7) did in fact rely upon it;

(8) and was thereby induced to act;

(9) to his injury and damage.

*Pace v. Parrish,* 122 Utah 141, 144–45, 247 P.2d 273, 274–75 (1952).

Williams and MILICO in the court below contended: [2] (1) Conder's reliance was unreasonable as a matter of law; (2) Conder suffered no damage as he could not recover for damages accruing after he learned of the "falsity" of the representations; (3) there was no representation made concerning a presently existing material fact; and, (4) the representations made to Conder were not false. In entering partial summary judgment, the trial court apparently relied on the issues of reasonable reliance and/or lack of damages.[3]

---

**1.** Mr. Peterson did not join in the motion in the lower court and is not a party to this appeal.

**2.** Matters not presented to the trial court prior to the ruling on the motion for summary judgment may not be raised for the first time on appeal. *Franklin Financial v. New Empire Development Co.,* 659 P.2d 1040, 1045 (Utah 1983).

**3.** In entering the partial summary judgment motion, Judge Daniels stated:

I tell you what the basis of my ruling was. I may have a hard time articulating this. It just seems to me that a person, if you are strongly induced to come for work and he finds out that it's fraudulent, he can quit right then if he wants'to and sue for being brought to work there. And whatever he's lost by quitting his other job and so forth. He can continue to work, but he can't—I don't think continue to work for three, four more years and then when he gets fired sue for having

## A. *Reasonable Reliance*

■ In a fraud action, a plaintiff must demonstrate that he or she, acting reasonably and in ignorance of the statement's falsity, did in fact rely upon the misrepresentation. *Pace,* 122 Utah at 145, 247 P.2d at 275. Thus, not only must there be reliance, but the reliance must be justifiable under the circumstances. Prosser and Keeton explain the policy behind the requirement of reasonable reliance: [4]

> The principle argument in support of some such requirement as justifiability of reliance would seem to be that of providing some objective corroboration to plaintiff's claim that he did rely. If plaintiff can claim reliance on the basis of the kind of statement on which no reasonable person would rely for one reason or another, then it is quite likely that plaintiff did not rely and if his testimony that he did is allowed as sufficient evidence on the basis of which a finder of fact can find reliance, then it will be too easy for a party to a contract to escape the consequences of his own bad judgment in making a bargain of some kind.

Prosser and Keeton, *The Law of Torts* § 108, at 749-50 (5th ed. 1984).

Reasonable reliance must be considered with reference to the facts of each case, and is usually a question for the jury to determine. *Berkeley Bank for Coops. v. Meibos,* 607 P.2d 798, 801 (Utah 1980). Although it is impossible to draw precise legal boundaries of when reliance is reasonable, *see Johnson v. Allen,* 108 Utah 148, 158 P.2d 134, 137 (1945), the courts have given some direction.

Generally, a plaintiff may justifiably rely on positive assertions of fact without independent investigation. *See Dugan v. Jones,* 615 P.2d 1239, 1247 (Utah 1980); Prosser and Keeton, *The Law of Torts,*

§ 108, at 749-54 (5th ed. 1984). It is only where, under the circumstances, the facts should make it apparent to one of his knowledge and intelligence, or he has discovered something which should serve as a warning that he is being deceived, that a plaintiff is required to make his own investigation. *Id.; see Pace v. Parrish,* 122 Utah 141, 145, 247 P.2d 273, 275 (1952).

Reliance also has been found reasonable even where a plaintiff executes a written agreement in reliance upon verbal promises that the contrary written provision is not operative, or where a plaintiff is induced to refrain from reading the contract. In *Berkeley Bank for Coops. v. Meibos,* 607 P.2d 798 (Utah 1980), for example, the bank brought a collection action against nine dairy farmers who had executed notes in favor of their cooperative, which had borrowed money from the bank, and which assigned the notes to the bank. The bank made statements that it would not collect on the notes in inducing plaintiffs to execute the notes. The court found plaintiffs' reliance on these verbal assurances reasonable under the circumstances, even though the notes clearly stated the farmers were responsible as guarantors.

However, where a plaintiff fails to read a contract without fault on the part of the defendant, the result is different. As the Utah Supreme Court explained in *Johnson v. Allen:*

> [Where there is nothing] said or done which would be reasonably calculated to disarm a reasonably prudent person so that he would sign the contract without reading it and in the absence of some act or artifice in inducing the other party to refrain from reading the contract relief from the fraud is often denied.

108 Utah 148, 158 P.2d 134, 137 (1945).

■ Applying the foregoing legal principles, we cannot say as a matter of law that

---

been brought there in the first place. It's like Laches. It seems to me there comes a point in time as a matter of law, if he wants to continue to work there, he shouldn't have the right to complain he was fraudulently induced to come to work.

**4.** Courts have sometimes analogized the concept of reasonable reliance to the concept of contributory negligence. *E.g., Jardine v. Brunswick*

*Corp.,* 18 Utah 2d 378, 423 P.2d 659, 662 (1967). This analysis leads to as much confusion as clarification. One thing that is clear, however, is that a contributory negligence analysis is *not* appropriate in an intentional misrepresentation case, such as the one before the Court. *Berkeley Bank for Coops. v. Meibos,* 607 P.2d 798, 804 (Utah 1980).

Conder was unreasonable in his reliance on the alleged misrepresentations made by Williams and MILICO that Conder would be an investment counselor and salesperson in the areas of real estate and securities. As noted, a plaintiff may justifiably rely on positive assertions of fact without independent investigation. It is only where, under the circumstances, the facts should be apparent to one of his knowledge and intelligence from a cursory glance, or he has discovered something which should serve as a warning that he is being deceived, that he is required to make an investigation of his own.

Although Conder entered into an agent's agreement expressly limiting his authority to selling insurance, Conder's affidavit alleges that he was relying on the verbal representations of Williams and MILICO that his training in the field of securities and other areas of investment counseling would begin later, thereby indicating that the contradictory written provision was of no effect. We cannot find on the facts in the record that Conder's reliance was unreasonable as a matter of law.

## B. *Damages*

 One must demonstrate some injury or damage in order to recover in fraud. *Pace*, 121 Utah at 145, 247 P.2d at 275. Further, a plaintiff has a duty to mitigate his damage. Also known as the doctrine of avoidable consequences, a plaintiff is not entitled to recover damages for any harm that he could have avoided by the use of reasonable effort after the commission of the tort. *See, e.g., Angelos v. First Interstate Bank of Utah*, 671 P.2d 772, 777 (Utah 1983); *Jankele v. Texas Co.*, 88 Utah 325, 332–34, 54 P.2d 425, 428–29 (1936); McCormick, *Handbook on the Law of Damages* § 33, at 127–30 (1935). Mitigation of damages is an affirmative defense and the burden is on the party whose wrongful act caused the damage to prove anything in diminution thereof. *Pratt v. Bd. of Educ.*, 564 P.2d 294, 298 (Utah 1977). However, in a fraud action, if the only item of damage is barred, as a matter of law, under the doctrine of avoidable consequences, the plaintiff is prevented

from recovering because he is unable to establish an essential element of the cause of action. McCormick, *Handbook on the Law of Damages* § 33, at 129 (1935).

Conder contends that to require him to mitigate his damage in this employment action is to make him find other employment thus taking away his right to affirm the contract and sue for damages. We disagree.

There is no dispute that "[t]he plaintiff in an action for fraud has the option to elect to rescind the transaction and recover the purchase price or to affirm the transaction and recover damages. The choice of remedy belongs to the victim of the fraud, and a choice cannot be forced upon him." *Dugan v. Jones*, 615 P.2d 1239, 1247 (Utah 1980); *see Mecham v. Benson*, 590 P.2d 304, 308 (Utah 1979). To require Conder to mitigate his damage, however, is not inconsistent with his right to affirm the transaction and recover damages. If, for example, there was evidence that Conder took reasonable steps to find new, comparable employment but could not locate new employment, a jury might find such steps were sufficient to satisfy his duty to mitigate.

There is a point in time, however, after which a plaintiff will be barred by his laches, waiver, or estoppel from bringing a fraud action. As the *Dugan* court explained:

> [A]ny delay on the part of the defrauded party ... may constitute a waiver of the right to rescind the contract. However, the right to recover damages for the fraud upon the affirmance of the contract is not so easily lost, for the defrauded party, who does not discover the fraud until he has partly performed, may go forward with the contract, keep what he has received, and still maintain his action for damages. *It is only when there is a new agreement between the parties, after discovery of the fraud, the court may find a waiver of the fraud action.*

*Dugan*, 615 P.2d at 1247 (emphasis added).

 With the foregoing principles in mind, we are unable to conclude based on

the record properly before this Court that, as a matter of law, Conder failed to establish *some* damage as required under *Pace*. Conder in his affidavit alleges he terminated his prior employment and was deprived of income that he would have derived from working in the areas of securities and real estate investment counseling as a result of the misrepresentations of Williams and MILICO. Williams and MILICO have proffered no evidence in the record in opposition to this evidence. Furthermore the record is unclear as to when Conder knew he would only sell insurance and thus when and if he entered into a new agreement with Williams and MILICO thus terminating his accrual of damages.

## C. *Presently Existing Material Fact*

Having determined that partial summary judgment was not supported on either of the trial court's apparent grounds, we now consider whether the judgment is sustainable on any other ground or theory presented to this Court and apparent on the record. *See Global Recreation v. Cedar Hills Development*, 614 P.2d 155, 157 (Utah 1980); *Goodsel v. Dep't. of Business Regulation*, 523 P.2d 1230, 1232 (Utah 1974).

Williams and MILICO argued below that fraud cannot be predicated upon representations or statements of an intention to perform or not perform an act in the future. However, the record indicates that Williams and MILICO represented that Williams presently *was* a full service financial company and that Conder would have employment opportunities in real estate, securities and annuities. Furthermore, if Williams and MILICO did not intend to perform the future promises when they made them, the misrepresentations are actionable. *Berkeley Bank for Coops. v. Meibos*, 607 P.2d 798, 805 (Utah 1980). As the *Berkeley Bank* court explained:

A closely similar problem is raised by a promise or statement of future conduct by one who, at the time, intends not to fulfill the promise. The promise itself is regarded as a representation of a present intention to perform. Hence, such a promise, made by one not intending to

perform operates as a misrepresentation—a misrepresentation of the speaker's state of mind, at the time, and is actionable as a misrepresentation of "fact." "To profess an intent to do or not to do, when the party intends the contrary, is as clear a misrepresentation and fraud as could be made."

*Id.* (quoting Harper and James, *The Law of Torts*, Vol. 1, 571–72 (1956)).

■ In this case, Conder contends that Williams and MILICO claimed their organization would provide him full service financial employment opportunities. Such statements regarding Conder's employment could properly be regarded as representations of a present intention, not a future promise, and could be found by a jury to be actionable as misrepresentations of fact.

## D. *Representations Were Not False*

■ The final argument on which the summary judgment motion may be sustained is that the representations made by Williams and MILICO were not false. Conder in his affidavit states that he learned Williams and MILICO were not authorized to do business as a full service financial company, but only as an insurance agency. This is not controverted by Williams and MILICO. On the evidence properly before this Court, therefore, Williams and MILICO failed to establish the lack of this essential element.

The trial court's conclusion that Conder had failed, as a matter of law, to establish the elements of fraud cannot be supported by the facts properly before this Court. The judgment of the trial court is reversed and this case is remanded for proceedings consistent with this opinion. No costs awarded.

JACKSON, J., concurs.

ORME, Judge, concurring:

I concur fully in the thorough and well reasoned main opinion. I write separately only to emphasize that it is the apparent failure of the two depositions of plaintiff

Conder to be *filed* with the district court pursuant to Rule 30(f) of the Utah Rules of Civil Procedure, rather than any failure formally to have had the depositions *published,* which I find fatal to respondents' position. Rule 56(c) entitles a party to summary judgment "if the pleadings, *depositions,* answers to interrogatories, and admissions on file, together with the affidavits, if any," so warrant.[1] Utah R.Civ.P. 56(c) (emphasis added).

While there has been a quaint custom in this state, apparently of longstanding, that depositions, even once duly filed, may not be used for Rule 56 purposes until they have been formally published, I see no requirement of formal publication in Rule 56 or anywhere else in our rules.[2] On the contrary, I see an entitlement to rely on filed depositions, if otherwise proper, when making a summary judgment motion without having to go through any additional procedural hoops.[3] Confusion about a requirement of formal publication ought to be definitively put to rest with new Rule 32(d), Utah R.Civ.P., which became effective January 1, 1987. While this change should hasten the demise of the formal publication tradition, a requirement of formal publication has been nothing but illusory heretofore anyway.

Had the depositions been duly filed, and as they were used in support of the motion for summary judgment, I at least would view them as eligible for inclusion in the record under the former practice of designating the record on appeal or as automatically part of the record under Utah R.App.P. 11(a) and R.Utah Ct.App. 11(a) despite the fact they were not formalistically published. I might even be inclined to grant the renewed motion to supplement the record if the *only* reason we did not have the depositions available to us was because they had not been formally published. But, alas, we are unable to determine from the record that the depositions were even filed, and for failure of the record to show us otherwise respondents have no one to blame but themselves. *See* Utah R.Civ.P. 30(f)(3).

---

1. The deposition has come to be regarded with considerably more judicial favor since the days when Justice Henriod dismissed it as a device which "takes people away from their work, ... harasses them without any cross-examination, ... increases legal fees and wastes manilla envelopes and scotch tape." *Lawson Supply Co. v. General Plumbing & Heating, Inc.,* 27 Utah 2d 84, 89, 493 P.2d 607, 611 (1972) (separate opinion of Justice Henriod). Indeed, it is now recognized that "[b]ecause a deposition is taken under oath and the deponent's responses are relatively spontaneous, it is one of the best forms of evidence for supporting or opposing a summary judgment motion." 10A C. Wright, A. Miller & M. Kane, *Federal Practice and Procedure* § 2722, at 51 (1983).

2. The publication ritual, at least as practiced in Third District Court, has involved nothing more than that the summary judgment movant recite: "I move that the deposition be published." The judge perfunctorily asks if there are objections and, hearing none, recites: "The deposition is published." The substantive motion is then argued. This ceremonial exchange between counsel and the court was omitted in this case.

3. Of course, "[o]nly that portion of a deposition that would be admissible in evidence at trial may be introduced on a summary judgment motion." 10A C. Wright, A. Miller & M. Kane, *Federal Practice and Procedure* § 2722, at 48–49 (1983).