George S. PERKINS and Lillie Perkins,
Plaintiffs and Appellants,

v.

Dick COOMBS, an individual, Coombs Investment Corporation, a Utah corporation, Interlake Thrift, a Utah corporation, and John Doe Fidelity Company, Defendants.

Dick COOMBS, Coombs Investment Corporation, and John Doe Fidelity Company, Defendants and Third–Party Plaintiff,

v.

CENTURY 21 MONSON & COMPANY, Peter Robert Lucero, and Jesse Monson, Third–Party Defendants.

INTERLAKE THRIFT, a Utah corporation, Cross–Claimant,

v.

Dick E. COOMBS, Cross–Defendant.

INTERLAKE THRIFT, a Utah corporation, Third–Party Plaintiff and Respondent,

v.

GUARANTY TITLE COMPANY, a Utah corporation, Southern Title Guaranty Company, Inc., aka Fidelity National Title Insurance Company, Inc., Mark J. Williams, an individual, and Ruth R. Coombs, an individual, Third–Party Defendants.

No. 860306–CA.

Court of Appeals of Utah.

Nov. 17, 1988.

Rehearing Denied Feb. 28, 1989.

Samuel King (argued in rebuttal), Eric P. Hartman (argued), Salt Lake City, for plaintiffs and appellants.

Thomas T. Billings, John W. Andrews (argued), Van Cott, Bagley, Cornwall & McCarthy, Salt Lake City, for Interlake Thrift.

R. Mont McDowell, Salt Lake City, for Dick & Ruth Coombs.

William D. Holyoak, Salt Lake City, for Peter Lucero.

Brant H. Wall, Salt Lake City, for Sec. & So. Title.

Dennis R. James, Salt Lake City, for Guar. Title.

Lon Rodney Kump, Salt Lake City, for Mark Williams.

Before GARFF, DAVIDSON and JACKSON, JJ.

## OPINION

DAVIDSON, Judge:

George and Lillie Perkins (appellants) seek reversal of the trial court's order finding priority of interest in respondent Interlake, refusing to grant punitive damages, and limiting the award of attorney fees. We reverse.

Appellants owned property in Salt Lake City which they agreed to sell to the Coombs Investment Corporation (CIC). The earnest money agreement of September 22, 1980, provided in pertinent part:

[Appellants] understand that upon closing, [they] will convey all of their right, title and interest in and to the purchase property to [CIC] except the second trust deed. This sale is subject to the ability of [CIC] to obtain commitment for a loan of approximately $17,000.00 at interest of 14% per annum secured by a first trust deed on the purchase property to provide funds for the down payment and refurbishment of the purchased property.

Prior to signing the earnest money agreement, CIC's agent explained to appellants that they must subordinate their interest to the purchase money lender selected by CIC. On October 29, 1980, CIC executed a promissory note and a trust deed with respondent Interlake Thrift (Interlake). The amount of the note was $20,756.44 at a stated interest rate of 18% but an effective interest rate of 24%.

Closing was held on October 31, 1980. The financing arrangements were explained to appellants, but the closing officer did not advise them of the deviation from the earnest money agreement in both the principal amount and the interest rate. Appellants provided a warranty deed to CIC which, in turn, executed a second posi-

tion trust deed to the sellers. On the same day, the documents were recorded in the following order: (1) the warranty deed; (2) CIC's trust deed to Interlake; and (3) CIC's trust deed to appellants.

Subsequently, CIC became delinquent in its obligation to Interlake. Dick E. Coombs (Coombs), president of CIC, was also delinquent in a personal loan with Interlake. A new loan was negotiated between Coombs and Interlake, for $24,688.70, combining both the CIC and Coombs' personal obligations, to bear interest at 24% and again to be secured by appellants' property.

At trial, Ronald D. Adams (Adams), vice president of operations for Interlake and a branch manager for the thrift during 1980–81, testified that on November 27, 1981, CIC and Coombs executed the new note and trust deed and, on the same day, Interlake's ledger concerning CIC's October 29, 1980 loan was stamped "paid in full." Additionally, Coombs' personal loan of June 1980 was similarly stamped. "To clear the paperwork," Interlake issued a check for $24,558.30 "payable to Interlake Thrift for Coombs Investment." When asked if the Coombs and CIC loans of 1980 were "both totally paid off and satisfied" on November 27, 1981, Adams replied, "Subject to the [consummation] of the new loan, yes."

Adams testified that Interlake was aware of appellants' position in the property and prepared another agreement to subordinate the 1980 trust deed to the November 27, 1981 loan. Appellants initially refused to sign the agreement and obtained counsel. After discussions during which neither appellants nor their counsel were informed that Coombs' personal loan had been consolidated in the new loan, appellants executed the subordination agreement on December 30, 1981. On January 6, 1982, Interlake recorded CIC's new note and trust deed in addition to the subordination agreement. Soon thereafter, CIC filed bankruptcy and appellants filed their complaint. Interlake and appellants entered into an agreement that Interlake would sell the property and hold the proceeds of the sale until the trial court determined priority.

In the first phase of trial, the court concluded that Interlake had priority in the first loan because appellants had a duty to inquire at the closing as to the actual terms of Interlake's loan to CIC. In the second phase of the trial, the court found that Interlake fraudulently induced appellants to execute the second subordination agreement, but found appellants had failed to mitigate their damages by not redeeming the property after CIC's second default. The court awarded appellants damages equivalent to the amount of Coombs' personal loan, denied punitive damages, and limited the award of attorney fees to $2,500.00. After their motion to amend judgment was denied, the Perkinses appealed.

Appellants now assert the trial court erred in determining Interlake's interest had priority. In addition, appellants claim it was error to fail to award punitive damages and to award attorney fees of only $2,500.00.

## PRIORITY OF INTEREST

■ The findings of fact declare "there is clear and convincing evidence of all the elements of fraud" in Interlake's dealings with appellants and their counsel in causing appellants to execute the second subordination agreement.

"The plaintiff in an action for fraud has the option to elect to rescind the transaction and recover the purchase price or to affirm the transaction and recover damages. The choice of remedy belongs to the victim of the fraud, and a choice cannot be forced upon him." *Dugan v. Jones*, 615 P.2d 1239, 1247 (Utah 1980).

The complaint filed by appellants prays for recission of the second subordination agreement. They are entitled to that remedy. The effect of such remedy is to restore all parties to the position they occupied immediately prior to the fraud. Appellants are bound by the first subordination agreement. Interlake had unilaterally paid off the subordinated agreement leaving appellants standing in first priority on the prop-

erty pursuant to the 1980 trust deed. In finding priority to be with Interlake the trial court was in error and is reversed.

## DAMAGES

### a. *Mitigation*

█ The trial court limited recovery in the second phase because appellants failed to redeem the property after CIC's second default. In *Conder v. A.L. Williams & Assoc., Inc.*, 739 P.2d 634 (Utah App.1987), this court discussed the remedies available to a plaintiff in an action for fraud. "To require [plaintiff] to mitigate his damage, however, is not inconsistent with his right to affirm the transaction and recover damages." *Id.* at 639. *See* Utah Code Ann. § 70A–2–721 (1980). However, it appears that Interlake stipulated away any defense of mitigation of damages. Adams testified the parties agreed to allow Interlake to conduct the sale of the property and that the proceeds would be applied to the "unpaid balance of the Perkins' contract with Mr. Coombs" if the sellers prevailed in the trial court.

### b. *Punitive Damages*

█ In *Atkin Wright & Miles v. Mountain States Telephone and Telegraph Co.*, 709 P.2d 330 (Utah 1985), the court wrote:

Punitive damages "are not intended as additional compensation to a plaintiff, [and] must, if awarded, serve a societal interest of punishing and deterring outrageous and malicious conduct which is not likely to be deterred by other means." Before punitive damages may be awarded, the plaintiff must prove conduct that is willful and malicious, or that manifests a knowing and reckless indifference and disregard toward the rights of others.

*Id.* at 337. The trial court concluded that punitive damages were not appropriate because the relief provided appellants was adequate. We have determined that the court erred in this conclusion. Consequently, the issue of entitlement to punitive damages is still to be determined. Punitive damages have been discussed in numerous cases, most

recently *Johnson v. Rogers*, 763 P.2d 771 (Utah 1988). "The standard for punitive damages in non-false imprisonment cases is thus clear: they may be imposed for conduct that is willful and malicious or that manifests a knowing and reckless indifference and disregard toward the rights of others." *Id.* at 774. Whether fraud alone can meet the standard has not been specifically determined. Although in the case of *Synergetics v. Marathon Ranching Co., Ltd.*, 701 P.2d 1106 (Utah 1985), the Utah Supreme Court upheld an award of punitive damages in a fraud action based on the peculiar facts and circumstances of that case. Due to the fraud and misrepresentation in this case, we remand for determination of whether punitive damages are appropriate and if so in what amount.

## ATTORNEY FEES

### a. *At Trial*

█ Appellants' brief asserts that they were not given an opportunity to testify, nor be cross-examined, on their exhibit concerning attorney fees for the second phase. They further claim the fees to be modest and that the court erred in reducing the requested award to $2,500.00.

During the ruling, the judge stated:

The court has reviewed this file in detail, and it appears to this court that since this matter was filed in the summer of 1982, and the court is very familiar with all of the hearings that were held when this division of the court had law and motion, and all of the hearings subsequent, that the amount of the attorney's fees in this case just boggle the mind of the court. Therefore, in the discretion of the court, the court is not going to award Mr. and Mrs. Perkins the full amount of their attorney's fees; only $2500.

In view of the reversal of the lower court's decision and the remand for further proceedings, the award of attorney fees is also reversed. This court, in *Barnes v. Wood*, 750 P.2d 1226, 1233 (Utah App.1988), discussed the basis for awarding attorney fees and concluded "[t]rial courts have wide

discretion in determining reasonable attorney fees provided there is evidence to support the amount awarded." *Id.* at 1233. Since much of this case will be heard again, we cannot determine the reasonableness of the fees awarded.

b. *On Appeal*

We find no basis upon which to award additional attorney fees on appeal. Appellants' request must be denied.

The judgment is reversed and remanded to the trial court for appropriate action in accordance with this opinion. Costs against Interlake.

GARFF, J., concurs.

JACKSON, Judge (concurring in result):

In *Behrens v. Raleigh Hills Hospital, Inc.*, 675 P.2d 1179 (Utah 1983), *Synergetics v. Marathon Ranching Co.*, 701 P.2d 1106 (Utah 1985), and *Johnson v. Rogers*, 763 P.2d 771 (Utah 1988), the Utah Supreme Court has identified "outrageous conduct" as the class of behavior for which punitive damages may be awarded. "[P]unitive damages must serve the interests of society by punishing and deterring *outrageous and malicious* conduct which is not likely to be deterred by other means." *Synergetics*, 701 P.2d at 1112 (citing *Behrens*, 675 P.2d at 1186) (emphasis added). For torts other than false imprisonment, punitive damages may be imposed for a tortfeasor's outrageous conduct that is either willful *or* knowingly reckless. *See Johnson*, 774–776. In *Johnson*, the court included drunk driving in the "categories of outrageous conduct" eligible for punitive damages and thrice more emphasized that "extreme, outrageous, and shocking behavior" is the justification for punitive damages. *Id.* at 776. As we noted in *Gleave v. Denver & Rio Grande Western Railroad*, 749 P.2d 660, 670 n. 14 (Utah App.1988), this language comports closely with that in Restatement (Second) of Torts § 908 (1979):

> (1) Punitive damages are damages, other than compensatory or nominal damages, awarded against a person to punish him for his outrageous conduct and to deter him and others like him from similar conduct in the future.
>
> (2) Punitive damages may be awarded for conduct that is outrageous, because of the defendant's evil motive or his reckless indifference to the rights of others. . . .

On remand, the trial court may find that Interlake's behavior is sufficiently extreme, outrageous, and shocking to support an award of punitive damages, but mere proof of the elements of fraud is not sufficient to support such an award.