STATE of Utah, in the Interest of C.Y., W.C.Y., D.J.Y., A.Y., Plaintiff and Respondent,

v.

William G. YATES, Defendant and Appellant.

No. 860293–CA.

Court of Appeals of Utah.

Nov. 18, 1988.

Louisa L. Baker (argued), Utah Legal Services, Inc., Salt Lake City, for defendant and appellant.

David L. Wilkinson, Atty. Gen., Sandra Sjogren (argued), Asst. Atty. Gen., for plaintiff and respondent.

David E. Littlefield (argued), Ann L. Wassermann, Littlefield & Peterson, Salt Lake City, guardian ad litem.

Before BILLINGS, GARFF and JACKSON, JJ.

OPINION

BILLINGS, Judge:

This is an appeal from a judgment permanently terminating appellant William G. Yates's ("Yates") parental rights. On appeal, Yates contends the juvenile court violated his due process rights by taking judicial notice of his conviction of second de-

gree homicide after the termination hearing had concluded. He further claims the State failed to establish by clear and convincing evidence, excluding the homicide conviction, that he was unfit or had abandoned his children. We affirm the juvenile court's judgment terminating Yates's parental rights.

## FACTS

Because the termination of parental rights is fact sensitive, we review the facts of the controversy in detail. *In re Adoption of T.R.F.*, 760 P.2d 906, 909 (Utah Ct.App.1988). Yates is the father of four minor children, two natural and two as a result of his wife's extra-marital relationships. On March 14, 1984, the juvenile court entered an order prohibiting Yates from residing with his children and he has not resided with them since. On January 28, 1985, following a hearing, the juvenile court entered an order finding Yates and his wife had neglected the children. Consequently, the four children were placed with the Division of Family Services. This order was based on the juvenile court's findings that the oldest child had been sexually abused by Yates, and that all four children suffered significant emotional problems stemming primarily from their parents' lack of emotional stability and parenting ability.

On August 14, 1985, after concluding Yates had not successfully completed the treatment plans designed to assist him to regain custody of his children, the Division of Family Services filed a petition to permanently terminate Yates's parental rights. During a six day termination hearing, the juvenile court heard testimony from 25 witnesses and received numerous exhibits. Evidence was presented that Yates refused to comply with a court order to stay away from the home, sexually abused his daughter, failed to protect her from being sexually abused by her grandfather, and failed to successfully complete a court-ordered treatment plan. Several mental health workers testified that Yates was an unfit parent. In summary, they cited low self-esteem, externalization of blame, a low frustration threshold, passive/aggressive and violent tendencies. They concluded that Yates was in emotional turmoil, was unstable, and unable to make appropriate choices.

Testimony and written reports from various psychologists revealed that prior to the termination hearing, Yates killed his wife's paramour. Yates admitted he may be going to prison in the near future. Moreover, Yates's estranged wife testified that she was nearby when Yates committed the homicide. She testified "I seen [Yates] with the gun, and [he] just stood and he couldn't believe it, like he was in shock that he did it. He couldn't believe he did it. . . ."

In February 1986, subsequent to the conclusion of the termination hearing, Yates pled guilty to second degree homicide, and was ordered to serve a one-to-fifteen-year prison sentence. The trial judge took judicial notice of Yates's conviction and sentence and referred to them in her findings:

The Court notes that in fact Mr. Yates was sentenced to a term of one to fifteen years in prison upon a plea of guilty to 2nd degree homicide . . . [Yates's] criminal conduct has placed him in prison for an extended period of time, making him physically incapable of caring for the children.

Expert testimony further established that all four of Yates's children are dysfunctional and/or mentally ill because of their home environment.

The juvenile court entered extensive and detailed findings in support of its August 19, 1986, order terminating Yates's parental rights which in summary concluded:

Yates has a long history of mental problems and emotional instability resulting in the placement of his children in foster care for many years. Yates's history includes severe depressive episodes with emotional breakdowns and intermittent hospitalizations. He admits he is presently emotionally unfit to take care of the children. Yates also admits he expects to serve prison time of eighteen months to five years and feels he would need additional time beyond that before

he would be in an emotional condition to care for his children.

The Division of Family Service's efforts to assist Yates have been futile. Although Yates entered into a treatment plan, and complied with the literal provisions of the plan, Yates made no significant progress in resolving the problems which created the original neglect or in improving his capabilities as a parent. Yates has never dealt with the sexual abuse of his daughter and continues to blame the child for the event. He has totally rejected his daughter who continues to be treated for severe mental illness at the Utah State Hospital.

Each of the children suffers from the long-term effects of their parents' conduct and conditions. The children are presently in treatment. All are adoptable children, but are desperately in need of permanence, and are extremely vulnerable to further emotional damage due to lack of permanent resolution of their family situation and the continued effects of their parents' problems. Both parents are in need of years of personal therapy before they can begin to learn adequate parenting skills.

Following the juvenile court's termination of his parental rights, and the withdrawal of his trial counsel, Yates sought the appointment of an attorney to pursue an appeal. His first request was denied by the juvenile court on September 29, 1986. He filed a second request on October 10 inartfully stating he was appealing the trial court's termination order. The juvenile court granted this request on October 16 and reappointed Utah Legal Services to represent Yates.

On October 17, 1986, Yates filed a motion for an extension of time to file a notice of appeal pursuant to Utah R.App.P. 4(e) because of his lack of legal representation.[1] This motion was filed 29 days after the time to file an appeal had run. The juvenile court denied the motion. Yates then filed this appeal and the State filed a mo-

tion to dismiss it as untimely. This court summarily denied the State's motion to dismiss by an order entered on May 5, 1987.

## TIMELY APPEAL

As a preliminary matter, we address the State's claim that this court lacks jurisdiction over this case because Yates's notice of appeal was untimely. Appeals permitted as a matter of right must be filed not more than 30 days after the entry of final judgment or order. R.Utah Ct.App. 4(a). However:

> The court from which the appeal is taken, upon a showing of excusable neglect or good cause, may extend the time for filing a notice of appeal upon motion filed not later than 30 days after the expiration of the time prescribed by Paragraph (a) of this rule.

R.Utah Ct.App. 4(e).

In the instant case, the juvenile court heard argument on Yates's motion for an extension of time and denied the extension. Yates appeals this refusal.

This court summarily denied the State's motion to dismiss by an order entered May 5, 1987. The denial of the State's motion in effect reversed the juvenile court's refusal to grant Yates an extension of time under Rule 4(e) to file his appeal of the termination of his parental rights. The question, therefore, is whether we should reconsider our May 5 order.

"[P]rior denial of [a] motion ... is now the 'law of the case.' " *Conder v. A.L. Williams & Assocs., Inc.*, 739 P.2d 634, 636 (Utah Ct.App.1987). Under the "law of the case" doctrine, courts seldom reconsider and vacate a decision rendered by a co-equal forum. *Id.* The "law of the case" doctrine " 'has evolved to avoid the delays and difficulties that arise when one judge is presented with an issue identical to one which has already been passed upon by a coordinate judge in the same case.' " *Id.* (quoting *Sittner v. Big Horn Tar Sands & Oil, Inc.*, 692 P.2d 735, 736 (Utah 1984));

---

**1.** This case arose before the effective date of the Rules of the Utah Court of Appeals which govern the procedure of this court. However, Rule 4(e) of the Rules of Appellate Procedure is substantively identical to R.Utah Ct.App. 4(e).

*Richardson v. Grand Central Corp.*, 572 P.2d 395, 397 (Utah 1977).

Accordingly, we decline to reconsider and overrule this court's prior denial of the State's request to dismiss this appeal as untimely. In the interests of judicial economy, we now proceed to the merits of this appeal.

## JUDICIAL NOTICE

■ Yates contends the juvenile court denied him due process by taking judicial notice of his conviction of second degree homicide after the termination hearing had concluded. While we agree that the court erred in taking judicial notice of the conviction, a review of the record compels our conclusion that it was a harmless error.

"[I]t is axiomatic that a court may not judicially notice a judgment in another case ... [t]o be noticed, a judgment in another case must be placed in evidence." *Coleman v. Texas Dep't of Public Safety*, 639 S.W.2d 34, 38 (Tex.Ct.App.1982) (citation omitted). It is improper for a court to sua sponte take judicial notice of records and proceedings in other actions "without giving full notice to the parties and without giving them an opportunity to explain or rebut" the judicially noticed facts. *Ruggles v. Riggs*, 477 A.2d 697, 705–06 (Del. 1984). *See State v. Lance*, 23 Utah 2d 407, 464 P.2d 395, 400 (1970). Furthermore, courts should not take judicial notice of relevant evidence after the record to the proceeding before the court is closed. *See Fireman's Fund Ins. Co. v. Wilburn Boat Co.*, 259 F.2d 662, 664 (5th Cir.1958).

In *State v. Lance*, 23 Utah 2d 407, 464 P.2d 395 (1970), the Utah Supreme Court addressed the issue of judicial notice of a post-hearing criminal conviction in a similar context. In *Lance*, the juvenile court deprived a mother of the guardianship of her three daughters and permanently terminated her parental rights to her son. The juvenile court took judicial notice of a social file which was not admitted into evidence at the termination hearing. The file contained evidence of the mother's post-hearing criminal conviction. "Included in the court's findings were facts that had not

even occurred at the time of the last hearing, such as the trial and conviction of [the mother]." *Id.* at 399. On appeal, the Utah Supreme Court reversed and remanded, concluding "the use of the social file was a denial of due process of law, since [the mother] had *no opportunity to know, cross-examine, explain or rebut this secret evidence.*" *Id.* at 400 (footnote omitted).

While it is difficult to conceive how Yates would "cross-examine, explain or rebut" what appears an indisputable adjudicative fact, we nonetheless believe the juvenile court erred in taking judicial notice of his post-hearing conviction sua sponte without notice to the parties or without supplementing the record. The Supreme Court's decision in *Lance* compels this result.

■ The pivotal question is whether the error resulted in prejudice sufficient to warrant reversal of the termination order. An error is prejudicial "only if a review of the record persuades the [appellate] court that without the error there was '*a reasonable likelihood of a more favorable result* for the defendant.'" *State v. Knight*, 734 P.2d 913, 919 (Utah 1987) (emphasis in original) (quoting *State v. Fontana*, 680 P.2d 1042, 1048 (Utah 1984)); *State v. Hutchison*, 655 P.2d 635, 636 (Utah 1982), interpreting Utah R. Crim.P. 30(a)). A reasonable likelihood is "'a probability sufficient to undermine confidence in the outcome.'" *Knight*, 734 P.2d at 920 (quoting *Strickland v. Washington*, 466 U.S. 668, 694 104 S.Ct. 2052, 2068, 80 L.Ed.2d 674 (1984)). Therefore, we must review the record and determine whether there is a reasonable likelihood that the outcome of the termination hearing would have been more favorable to Yates had the juvenile court not taken judicial notice of his post-hearing conviction.

Even though the juvenile court improperly took judicial notice of Yates's conviction, its judgment will stand if there is other properly admitted evidence establishing those same facts. In the instant case, there was evidence properly before the court that Yates had committed and been charged with and would soon be incarcerat-

ed for the homicide. Testimony and written documents from various mental health workers indicate Yates had killed his wife's paramour, and Yates testified that he anticipated spending approximately 5 years in prison in the near future. Yates's estranged wife testified about the homicide. This independent evidence compels our conclusion that it was harmless error for the juvenile court to take judicial notice of Yates's conviction.

Further, our review of the record, even excluding any reference to the homicide conviction, persuades us there is clear and convincing evidence to uphold the juvenile court's termination order.

## TERMINATION OF PARENTAL RIGHTS

■ The parent-child relationship is accorded constitutional protection. *In re K.S., Jr. & B.S.*, 737 P.2d 170, 172 (Utah 1987); *In re J.P.*, 648 P.2d 1364, 1377 (Utah 1982); *see In re T.R.F.*, 760 P.2d 906, 912 (Utah Ct.App.1988). Consequently, "[a]lthough it is the welfare of the child that the law seeks to protect, the Due Process Clause requires that a finding of unfitness of the parent or of the parent's abandonment or substantial neglect be supported by clear and convincing evidence." *In re K.S.*, 737 P.2d at 172.

We will not disturb the juvenile court's findings and conclusions unless the evidence clearly preponderates against the findings as made or the court has abused its discretion. *Id.*

The State claims that Yates's parental rights were properly terminated on the grounds that 1) he was "unfit or incompetent by reason of conduct or condition which is seriously detrimental" to his children, or 2) he has abandoned the children. *See* Utah Code Ann. § 78–3a–48 (1987). We agree with the juvenile court that Yates is an unfit parent. Therefore, we need not consider whether Yates abandoned his children.

■ In order to terminate parental rights for unfitness, "the parent's conduct or condition must be a 'substantial depar-

ture from the norm.'" *In re K.S.*, 737 P.2d at 172 (quoting *In re P.L.L.*, 597 P.2d 886, 888 (Utah 1979)). "An unfit or incompetent parent is one who 'substantially and repeatedly refuse[s] or fail[s] to render proper parental care and protection.'" *Id.* at 173 (quoting *In re S.J., H.J., & S.J.*, 576 P.2d 1280, 1282 (Utah 1978)). Moreover, in order to permanently terminate parental rights, "the parent's conduct or condition must be such that it cannot be corrected, after notice and opportunity, with reasonable efforts of assistance." *In re S.R.*, 735 P.2d 53, 56 (Utah 1987).

■ There is clear and convincing evidence to support the juvenile court's detailed findings that Yates is an unfit parent despite extensive efforts by the State to rehabilitate him. Yates sexually abused his oldest daughter and continues to deny any such conduct. Yates did not prevent his daughter from being sexually abused by her grandfather. Yates places his own needs and desires to be with his wife above his responsibility to protect his children. Several mental health workers testified that Yates is emotionally unstable, distraught, and has violent tendencies. The evidence reveals that Yates experienced numerous severe depressive episodes with emotional breakdowns and intermittent hospitalizations. Yates portrays passive/aggressive behavior. He is obsessed with his wife yet has beaten her with a billy club. As a result, in part, of Yates's conduct and condition, all four children are dysfunctional and/or mentally ill.

Moreover, Yates's conduct is a substantial departure from the norm and he is unable to render proper parental care and protection to his four children despite extensive rehabilitative plans devised and implemented by the State in an effort to reunite the family. We concede Yates has attempted to complete the court-ordered rehabilitative program. However, we cannot ignore the fact that no significant improvement in his parenting skills has been noted despite his efforts. It is not sufficient to merely go through the motions of a treatment plan. The plan is developed to change attitudes and behavior. If after a

reasonable period of time, no positive change in parenting skills occur, a termination of parental rights is appropriate. Children cannot remain in limbo indefinitely where there is no reasonable likelihood of their parents gaining necessary parenting abilities. Given his inadequacy as a parent, his mental and emotional instability, and his violent behavior, it is difficult for us to believe that he has the potential to "participate meaningfully in, and follow through with, corrective rehabilitation programs to equip himself to contribute to the basic physical, emotional, and economic needs of the children over an extended period of time." *In re K.S., Jr. & B.S.*, 737 P.2d 170, 173 (Utah 1987).

This case is not similar to *In re Winger*, 558 P.2d 1311 (Utah 1976), as claimed by Yates, where the Supreme Court reversed the juvenile court's order terminating parental rights for unfitness. In *Winger*, the juvenile court's decision to terminate was based only on the fear that the mother *might*, in the future, harm her child or be unable to care for her. In our case, the record amply demonstrates that Yates's conduct has been and continues to be detrimental to his children. The case is much closer to *In re S.R.*, 735 P.2d 53 (Utah 1987), where the Court terminated a mother's parental rights because her conduct was detrimental to the children and could not be corrected by reasonable efforts.

This case is also distinguishable from *In re Walter B.*, 577 P.2d 119 (Utah 1978), which Yates claims mandates a reversal of this termination order. The Division of Family Services has provided Yates substantial assistance to improve his parenting abilities, unlike the natural mother in *Walter B.* Several treatment plans were established and implemented to assist Yates. Finally, although the record in *Walter B.*, did not reveal any concrete facts concerning the mother's condition and parenting ability, *id.* at 125, the record before us is replete with instances of Yates's inability to parent.

The juvenile court's finding that Yates is an unfit parent is supported by clear and convincing evidence. Accordingly, the order of the juvenile court permanently terminating his parental rights is affirmed.

GARFF and JACKSON, JJ., concur.